■ Joyce Botway, Respondent, v American International Assurance Company of New York, Appellant.—Order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered on or about August 15, 1988, which denied defendant's motion for summary judgment, unanimously modified, on the law, to grant the motion to the extent of dismissing the demand for punitive damages, and otherwise affirmed, without costs.

The action is brought by the beneficiary of a life insurance policy against the insurer to recover the proceeds of the policy and punitive damages because of the refusal to pay. The insurer defends, and counterclaims for rescission of the policy, on the ground that it would not have issued the policy had it known of the insured's longtime drug use, and that the insured misrepresented the state of his health in failing to disclose such drug use in his application for insurance. In particular, the insurer contends that two questions on its application answered by the insured in the negative should have been answered in the affirmative, namely, "Have you consulted a physician for any illness during the past five years * * * or do you know of any impairment in your health or physical condition?", and "Have you ever been treated for or told you had heart disease, high blood pressure, diabetes, lung disease, cancer, ulcer or any other serious disorder?"

The insurer moved for summary judgment, asserting that

certain records it had obtained of the Bridge Plaza Treatment and Rehabilitation Clinic, a methadone maintenance clinic which the insured appears to have checked himself into a few weeks prior to his death, show that the insured had been treated for drug abuse on a fairly regular basis for at least 10 years prior to the time of his having applied for the insurance. In opposition, plaintiff, the insured's beneficiary and widow, stated that she was unaware of the insured having consulted any physicians within five years prior to the insurance application, that she was unaware of any particular health problems suffered by the insured, and that the insured's "occasional drug involvement" in the past was never a serious problem. IAS denied the motion, finding that "[i]ssues are raised insofar as what the correct answers to the insurance questionnaire should be and in fact whether the answers given were false sufficient to permit a disclaimer." The insurer appeals, and, except with respect to the demand for punitive damages, we affirm.

First, the Bridge Plaza record relied upon by the insurer as proof of the insured's longtime drug use is not certified, and is thus nothing more than hearsay (CPLR 4518 [c]). There is, in other words, no competent proof that the insured was, as claimed, a drug user, let alone one suffering from an "impairment" to health or physical condition, "illness", or "other serious disorder" because of his drug use. Second, because the insurer does not adequately describe exactly what its underwriting practices are with respect to applicants who are drug users, it remains unclear to what degree the insured's drug use, had it been divulged, would have influenced the insurer's decision to issue a policy in this instance (Di Pippo v Prudential Ins. Co., 88 AD2d 631). Third, and most important, we are entirely in accord with IAS that the questions posed on the insurance application are ambiguous and raise, at best, a jury question as to whether the insured should have understood the terms "impairment", "illness" and "other serious disorder" to mean drug addiction (compare, Vander Veer v Continental Cas. Co., 34 NY2d 50, 52 ["as a physician", the insured must have been aware of the significance of his medical condition to the insurer]; Wageman v Metropolitan Life Ins. Co., 24 AD2d 67, 70, affd 18 NY2d 777 ["anyone of mature experience" would know that the insured's condition was one of substantial medical concern that the insurer would want to know of]). Put otherwise, assuming the insured was in fact an intravenous heroin addict, we are not prepared to say, as a matter of law, that he suffered from an "impairment" to

health or physical condition, "illness" or "other serious disorder". Given that ambiguities in the policy are to be resolved against the insurer *(United States Fid. & Guar. Co. v Annunziata,* 67 NY2d 229, 232), a jury might well conclude that if illicit drug use is so crucial a factor in the determination whether to issue life insurance, the application drafter by the insurer should have specifically called for information bearing thereon just as it specifically called for information bearing on heart disease, diabetes, cancer, etc. The question that the insurer would have us answer as a matter of law—did the insured misrepresent his health—is, we hold, a question of fact to be answered by the jury in light of their understanding of the terms "impairment", "illness" and "serious disorder" as used in the insurer's application. We would note that no cases are cited to us voiding a life insurance policy on the ground that a failure to disclose illicit drug use constitutes, as a matter of law, a misrepresentation as to one's health.

Plaintiff's demand for punitive damages, incorrectly pleaded as a separate cause of action *(M. S. R. Assocs. v Consolidated Mut. Ins. Co.,* 58 AD2d 858), should have been dismissed. In the absence of any allegations to support a finding of "wanton dishonesty as to imply a criminal indifference to civil obligations" *(Walker v Sheldon,* 10 NY2d 401, 405), punitive damages may not be recovered by the beneficiary of an insurance policy against the carrier who issued it. The pleadings and prior proceedings in this case disclose a serious triable issue interposed in good faith by the defendant insurance company. Under these circumstances, punitive damages are not recoverable as a matter of law *(M. S. R. Assocs. v Consolidated Mut. Ins. Co., supra; Hebert v State Farm Mut. Auto. Ins. Co.,* 124 AD2d 958). *[See,* 151 AD2d 306 (decided herewith).] Concur—Ross, J. P., Asch, Kassal and Wallach, JJ.