**John W. RIORDAN and Jane Fox, Plaintiffs,**

**v.**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**No. 90 Civ. 0467 (SWK).**

United States District Court, S.D. New York.

Dec. 3, 1990.

Wilkofsky, Friedman, Karel & Cummins by: Jonathan Wilkofsky, New York City, for plaintiffs.

Feldman & Rudy by Gerald F. Kirby, Roslyn Heights, N.Y., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs bring this diversity suit to recover under a liability insurance policy issued by defendant. The complaint alleges claims sounding in fraud and contract, together with a claim under the New York General Business Law, arising from defendant's alleged failure to satisfy its obligations under the policy. The complaint also seeks punitive damages. Defendant interposed an answer to the complaint denying its material allegations and raising various affirmative defenses including partial satisfaction of plaintiff's claim.

Defendant now moves, pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, for an order dismissing the complaint on the grounds that the complaint fails to state a claim against it. Defendant also moves pursuant to Rule 9(b) on the ground that the complaint fails to plead fraud with the requisite particularity. Plaintiffs cross-move for an order, pursuant to Rule 15(a), granting them leave to amend their complaint and, pursuant to Rule 56(a), granting them partial summary judgment with respect to the claims of the proposed amended complaint.

## BACKGROUND [1]

On May 12, 1988, plaintiffs purchased from defendant Nationwide Mutual Fire Insurance Company ("Nationwide") an "Elite II" homeowners insurance policy (the "Policy") which insured that certain real property located at 48 Overlook Road, Ossining, New York (the "Premises") together with the personal property contained on the Premises (the "Contents"). Among the Policy's various available options, plaintiffs selected Option I, "Extended Replacement Cost Coverage" governing the Contents, and Option J, "Replacement Cost Guarantee" governing the Premises.

On July 17, 1989, the Premises and Contents were damaged due to a fire and its effects, a covered peril under the Policy. Plaintiffs immediately retained Steven Seltzer, Esq. ("Seltzer"), a public adjuster licensed to represent insureds within the State of New York and a vice president and general counsel of the adjusting firm Goldstein Affiliates, Inc. ("Goldstein Affiliates"). With the assistance of Seltzer and Goldstein Affiliates, plaintiffs timely submitted to Nationwide a Sworn Statement and Proof of Loss, sworn to on October 10, 1989 (the "Proof of Loss"), indicating, among other things, that plaintiffs' loss with respect to the Contents was $147,-421.49 based on "replacement cost if destroyed or restoration cost if restorable." In addition to the Proof of Loss, plaintiffs submitted to Nationwide a seventy-seven page list of items to be replaced or repaired under the Policy, together with other documentation of their loss. Nationwide, however, did not hire experts to appraise the cost to repair, restore or replace plaintiffs' antique furniture until five months after the fire.

1. Unless otherwise indicated, the pertinent facts are taken from the proposed amended complaint and the exhibits incorporated therein, in accordance with Rule 12(b) of the Federal Rules of Civil Procedure.

The proposed amended complaint alleges that from the date of the fire through approximately mid-January 1990, Nationwide made no offers to settle any part of plaintiff's claim despite plaintiffs' timely filing of a Proof of Loss, documentation of their loss and apparent willingness to settle the building portion of the claim for the amount recommended by Nationwide's claims adjuster, John Hahn ("Hahn"). Hahn, a twenty-year veteran with Nationwide, indicates that his supervisor, Joseph Kenyon, had expressly rejected settling the Contents portion of plaintiffs' claim, despite plaintiffs' expressed willingness to accept the amount Nationwide's own builder had recommended, because Mr. Kenyon specifically refused Hahn authority to settle on a "piecemeal" basis. After an apparent inquiry by the State of New York Insurance Department concerning the settlement of plaintiffs' claim, Nationwide advised the Insurance Department, by letter dated April 11, 1990, that it had offered $53,571.65 for the dwelling portion of the claim and $20,960.00 for the contents portion. Plaintiffs allege that no such offer was ever conveyed to them, and there is no evidence that the April 11, 1990 letter to the Insurance Department was circulated to plaintiffs.

With respect to plaintiffs' Contents claim, Hahn admits valuing the Contents loss for adjustment purposes at $20,000 on an actual cash value basis after having received plaintiffs' Proof of Loss indicating that plaintiffs' had sustained a loss of $147,421.49, a large portion of which resulted from the destruction of, or damage to, antiques. There is no indication of how Hahn arrived at the $20,000 figure. There is neither documentary evidence of the basis of Nationwide's *de facto* rejection of plaintiffs' claim, nor evidence of formal rejection. Nationwide does assert that plaintiffs' failure to itemize their Contents loss on Nationwide forms hampered Nationwide's ability to properly evaluate the Contents claim.

Hahn admits that Nationwide policy and practice is to base settlement of a replacement value claim upon actual cash value unless and until the insured replaces destroyed personal property with his or her own funds. Hahn also admits that it is Nationwide's policy and practice to approach claims settlement upon the premise that there are no time constraints within which Nationwide must operate. Hahn testified at his deposition as follows:

Q: Let's talk about contents for a moment.
Is it Nationwide's practice as you understand it, to require the insured under the replacement value coverage, to replace their personal property out of their own funds before replacement value coverage would apply?

A: Yes.

Q: And is your testimony the same with respect to Nationwide's obligation to pay the loss within a certain period of time? That is, is there any restriction or any rule requiring the claim to be paid within a certain period of time?

A: No. I just stated that. There is no time limit.

Q: And that would apply both to contents and to—

A: To the total claim, sure.

Q: And with respect to this claim and other similar claims, have you approached them all that way, with that thought in mind?

A: I can't speak for other claims, but for the most part, yes.

Deposition of John Hahn (attached as Exhibit "I" to the Proposed Amended Complaint) at 137.[2] Without further elabora-

2. Plaintiffs' allege a litany of conduct constituting deceptive business practices in support of their claim under New York General Business Law § 349 including (a) the unwieldy nature of Nationwide's claims settlement review system, (b) misrepresentations by Plaintiff's insurance agent, John Rotando, concerning the quality of Nationwide claims adjustment service, (c) Nationwide's "flagging" of plaintiffs' account after plaintiffs filed claims on two minor losses and (d) improper disbursement jointly to plaintiffs and their mortgagee of a $25,000 advance on their Premises claim. For the purposes of the instant motion and cross-motion under Rules 12 and 15, the Court will address in detail only those evidentiary allegations which bear directly upon plaintiffs' allegations of deceptive policy

tion, Hahn also testified that under an identical policy of insurance, differing circumstances might cause Nationwide to approach claim settlement of insureds differently. Proposed Amended Complaint Exhibit "I" at 134.

Plaintiffs also allege that "[s]ix (6) months to the day prior to suffering the fire ... Nationwide had identified plaintiffs' relationship with Defendant as not being a profitable one, and, specifically blacklisted them." Proposed Amended Complaint ¶ "Twenty-Sixth." After having suffered two minor losses, one due to a boiler puff-back, and the second due to vandalism, a woman identified only as "Denise," from Nationwide's underwriting department, dispatched a memorandum to Nationwide's issuing agent:

> This does not look to be a real profitable account. You may want to review it for flagging purposes. Advise. Denise.

Proposed Amended Complaint at ¶ "Twenty-Fourth. Nationwide's issuing agent responded as follows:

> Hi, Denise:
>
> I realize we had a few claims, but I have known the Riordan's for a number of years and they are excellent people. I will watch claims—Thanks for your concern.

*Id.*

Plaintiffs' proposed amended complaint asserts a claim founded upon Nationwide's breach of its obligations under the Policy, a claim under New York General Business Law § 349 (governing deceptive business practices) and a claim for punitive damages. The common law fraud claims of the original complaint do not appear as such in the proposed amended complaint. Plaintiffs' alleged injury is summarized by the complaint's allegation that:

> Despite the passage of almost one (1) year and the presentation of countless documents, numerous meetings between the insured's representatives and the insurer, despite the pleadings and protestations offered by the insureds and their representatives, Defendant has yet either to make payment on Plaintiffs' claim, an offer of compromise on plaintiffs' claim, or to set forth, by way of explanation, any excuse, affirmative defense or rationale of any kind detailing its refusal to do so.

Proposed Amended Complaint ¶ "Fifty-First." Furthermore, based upon Hahn's deposition testimony and plaintiffs' claim file, plaintiffs allege that Nationwide has adopted or engendered, with respect to certain categories of claims or insureds, a claim settlement policy and practice designed to frustrate fair and efficient claim settlement, in violation of the New York Insurance Law and the rules promulgated thereunder. Specifically, plaintiffs allege that Nationwide's policy and practice is to: (a) refuse to settle claims piecemeal even where agreement can be had on the settlement value of a portion of a claim; (b) value claims for adjustment at present cash value despite the insured's election of replacement value coverage; (c) require insureds to replace items out of their own funds before Nationwide will advance monies on a replacement value basis; (d) train adjustors without regard to the requirements of New York Insurance Law and the rules promulgated thereunder; and (e) compel policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them. In connection with their Section 349 and punitive damages claims, plaintiffs also allege that Nationwide engages in deceptive advertising, founding such allegations on Nationwide's advertising campaign suggesting prompt and efficient claim settlement, and plaintiffs' own experience with Nationwide's claims settlement practice.

## DISCUSSION

### I. *Defendant's Motion to Dismiss the Complaint and Plaintiffs' Cross-Motion to Serve Amended Complaint*

When evaluating a motion to dismiss under Rule 12(b), pleadings are to be construed in the light most favorable to the

and practice in connection with their claim under Section 349.

pleader and accepted as true. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint shall not be dismissed unless it appears that the pleader can prove no set of facts entitling him to relief. *Id.* Where fraud is alleged, this rule is simply applied in light of Rule 9(b)'s particularity requirements. *Ross v. Bolton,* 904 F.2d 819 (2d Cir.1990).

Presented with defendant's motion to dismiss and plaintiffs' cross-motion for leave to serve an amended complaint,[3] the Court deems defendant's motion to dismiss addressed to the proposed amended complaint.[4] Although leave to serve an amended complaint shall be freely granted, the Court shall not permit amendment where the new claim cannot withstand a motion to dismiss. *Forman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). There is no apparent prejudice to defendant from the timing of the proposed amendments, and the Court will therefore consider the amended claims' ability to survive defendant's motion to dismiss dispositive of both the motion and cross-motion.

*A. Plaintiffs' General Business Law Claim*

The Court rejects defendant's threshold argument that the Court should not consider the proposed amended claims on the basis that a plaintiff may not use information obtained during discovery to amend its complaint to assert a fraud claim in response to a defendant's motion to dismiss pursuant to Rule 12(c). First, the authority defendant relies upon for this argument, *Madonna v. United States,* 878 F.2d 62 (2d Cir.1989), held only that a plaintiff's expressed belief that extensive discovery would uncover defendant's fraud shall not preclude dismissal of the complaint. In light of Hahn's deposition testimony, plaintiffs can hardly be faulted either for seeking leave to amend their complaint to allege more precisely their General Business Law claim or for conducting expeditious discovery.

Review of the proposed amended complaint establishes that plaintiffs allege sufficient facts to state a claim for relief under New York General Business Law § 349. Section 349 provides, in pertinent part:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful....
>
> (b) This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state....
>
> * * * * * *
>
> (h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y.Gen.Bus. § 349 (McKinney's 1988). The statute contains no requirement that a plaintiff demonstrate that the deceptive practice was intentional or reckless, or constituted fraud in order to state a valid claim for relief, *Allstate Ins. Co. v. Foschio,* 93 A.D.2d 328, 462 N.Y.S.2d 44 (2d Dept.1983), although the Court may consider such factors in determining whether to award treble damages or attorney's fees.

3. The Court considers only the pleadings and exhibits annexed thereto in determining these motions and, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, excludes those materials presented to the Court outside the pleadings.

4. Defendant acknowledges that it is proper to do so since its motion sought to dismiss the fraud claims of the complaint, the very claims that are contained in the proposed amended complaint's Section 349 and punitive damages claims.

*See* R. Givens, *Practice Commentaries* § 349 (McKinney's 1988).

Plaintiffs' allegations that their injury resulted from a Nationwide claim settlement practice and policy violative of the New York Insurance Law easily satisfies the elements of a claim under Section 349 since plaintiffs allege deceptive practices expressly proscribed by the Insurance Law. Insurance Law § 2601 defines unfair claim settlement practices as follows:

> (1) Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;
>
> * * * * * *
>
> (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;
>
> (4) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear, except where there is a reasonable basis supported by specific information available for review by the Department [of Insurance] that the claimant has caused the loss to occur by arson. After receiving a properly executed Proof of Loss, the insurer shall advise the claimant of acceptance or denial of the claim within thirty (30) working days; or
>
> (5) Compelling policy holders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.
>
> * * * * * *

N.Y. Insurance Law § 2601. The rules promulgated thereunder provide, in relevant part:

> **216.0 Preamble.** (a) Section 2601 of the Insurance Law prohibits insurers doing business in this State from engaging in unfair claims settlement practices and provides that, if any insurer performs any of the acts or practices proscribed by that section without just cause and with such frequency as to indicate a general business practice, then those acts shall constitute unfair claims settlement practices. This Part contains claim practice rule which insurers must apply to the processing of all first and third-party claims arising under policies subject to this Part....
>
> (b) This Part is issued for the purpose of defining certain minimum standards which, if violated without just cause and with such frequency as to indicate a general business practice, then those acts shall constitute unfair claims settlement practices....
>
> (e) *Claim practice principles to be followed by all insurers.*
>
> (1) Have as your basic goal the prompt and fair settlement of all claims.
>
> (2) Assist the claimant in the processing of a claim.
>
> (3) Do not demand verification of facts unless there are good reasons to do so. When verification of facts is necessary, it should be done as expeditiously as possible.
>
> (4) Clearly inform the claimant of the insurer's position with regard to any disputed matter.
>
> * * * * * *
>
> **216.3 Misrepresentation of policy provisions.** (a) No insurer shall knowingly misrepresent to a claimant the terms, benefits or advantages of the insurance policy pertinent to the claim.
>
> (b) No insurer shall deny any element of a claim on the grounds of a specific policy provision, condition or exclusion unless reference to such provision, condition or exclusion is made in writing.
>
> (c) Any payment, settlement or offer of settlement which, without explanation, does not include all amounts which should be included according to the claim filed by the claimant and investigated by the insurer shall, provided it is within the policy limits, be deemed to be a communication which misrepresents a pertinent policy provision.
>
> * * * * * *
>
> **216.6 Standards for prompt, fair and equitable settlements.** (a) In any case where there is no dispute as to coverage, it shall be the duty of every insurer to offer claimants, or their autho-

rized representatives, amounts which are fair and reasonable as shown by its investigation of the claim, providing the amounts so offered are within policy limits and are within the policy provisions.

(b) *Actual cash value,* unless otherwise specifically defined by law or policy, means the lesser of the amounts for which the claimant can be reasonably expected to:

(1) repair the property to its condition immediately prior to the loss; or

(2) replace it with an item substantially identical to the item damaged....

(c) Within 15 days after receipt by the insurer of a properly executed proof of loss and/or receipt of all items, statements and forms which the insurer requested from the claimant, the claimant, or the claimant's authorized representative, shall be advised in writing of the acceptance or rejection of the claim by the insurer....

(e) In any case where there is no dispute as to one or more elements of a claim, payment for such element(s) shall be made notwithstanding the existence of disputes as to other elements of the claim where payment can be made without prejudice to either party.

* * * * * *

11 N.Y.C.R.R. §§ 216.0–216.6. Essentially, plaintiffs allege that while Nationwide was justifying on various grounds its refusal to settle any part of their claim for reasonable amounts, Nationwide violated numerous provisions of Section 2601 and Part 216 of the Rules promulgated thereunder, in an effort, among other things, to coerce plaintiffs to settle for an amount far less than that to which they were entitled. The Court thus has little difficulty in concluding that a policy and practice of violating New York Insurance Law § 2601 and the rules promulgated thereunder, as alleged by plaintiffs, if proven, constitutes a "deceptive business practice" sufficient to satisfy the requirements of Section 349. Plaintiffs' Section 349 claim is in no way undermined by their assertion that Nationwide claim settlement practice is violative of, and directly treated by, New York Insurance Law § 2601, under which there is no private cause of action, *Halpin v. Prudential Ins. Co. of America,* 48 N.Y.2d 906, 425 N.Y.S.2d 48, 401 N.E.2d 171 (1979) (no private cause of action under former § 40–d of Insurance Law, now § 2601). Section 349 applies "to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state." N.Y.Gen.Bus. § 349(h).

■ Nationwide urges that the Court is compelled to reject plaintiffs' Section 349 claim. Under Section 349, it contends, the alleged deceptive practice must be of such a nature so as to warrant a finding of public injury or violation of a public right. Nationwide argues that because this action is a first-party insurance claim, the nature of the parties' dispute is inherently private, without ramifications to the public at large.

Nationwide's reading of plaintiffs' allegations under Section 349 is too narrow. Although plaintiffs allege that their primary and direct injury results from Nationwide's breach of its obligations under the Policy, plaintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large. Plaintiffs allege a direct causal connection between defendant's alleged illegal claim settlement practice and Nationwide's avoidance of its obligations under the Policy and therefore set forth precisely such evidentiary allegations of injury to the public at large as are required to sustain their claim under the General Business Law. *See Genesco Entertainment, A Div. of Lymutt Industries, Inc. v. Koch,* 593 F.Supp. 743, 750–52 (S.D.N.Y.1984) (plaintiff must demonstrate some public injury to sustain a claim under Section 349). The public injury inherent in such a scheme, if proven, is unquestionable since the alleged deceptive practices go to the very essence of the services Nationwide provides to the public on a grand scale, as well as its obligation to deal with the public in good faith.

Although the legislative history and cases interpreting Section 349 make clear the limitations and underlying policy concerns of the statute, *see, e.g., Genesco En-*

*tertainment, supra,* 593 F.Supp. at 750–52; *Sulner v. General Accident Fire and Life Assurance Corp. Ltd.,* 122 Misc.2d 597, 471 N.Y.S.2d 794 (N.Y.Sup.Ct.1984), there is nothing in these sources or in the statute itself which indicates a legislative intent to exclude the insurance industry from the statute's remedial scope. To the contrary, there is every indication that the legislature intended the statute to apply to any business so as to effect its broad remedial purpose, notwithstanding the applicability of any other laws, so long as the elements of a claim under its provisions are satisfied. *See Sulner,* 471 N.Y.S.2d at 796–97.

*B. Plaintiffs' Claim for Punitive Damages*

1. Punitive Damages in First–Party Insurance Actions

A claim for punitive damages cannot be sustained in a private commercial dispute unless the pleading alleges "a gross and wanton fraud upon the public," conduct far more culpable than "an isolated transaction incident to an otherwise legitimate business." *Walker v. Sheldon,* 10 N.Y.2d 401, 406, 223 N.Y.S.2d 488, 492, 179 N.E.2d 497 (1961). The public injury requirement avoids offending the strong public policy against the uncontrolled use of coercive economic sanctions in wholly private arrangements, for centuries a province only of the State. *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976).

In *Walker,* a case which involved allegations of fraud in the regular course of the defendant's publishing business and perhaps the leading New York case on punitive damages, the New York Court of Appeals stated "[i]t may be difficult to formulate an all-inclusive rule or principal as to what is an appropriate case for the recovery of punitive damages." 10 N.Y.2d at 406, 223 N.Y.S.2d at 492, 179 N.E.2d at 499. The Court of Appeals held, however, that "there may be recovery of exemplary damages in [otherwise private] fraud and deceit actions where the fraud aimed at the public generally, is gross and involves high moral culpability." *Id.* 223 N.Y.S.2d at 491, 179 N.E.2d at 499.

[5] Although New York courts narrowly restrict punitive damages claims in first-party insurance actions, they have, until recently, consistently refused to abrogate the right to seek punitive damages in such actions. Relying upon *Walker,* the Appellate Division, First Department has adopted the view that a punitive damages claim in a first-party insurance action may lie, notwithstanding legislative preemption of a private right of action under Insurance Law § 2601, if the complaint contains (1) sufficient evidentiary allegations of ultimate facts (2) of a fraudulent and deceitful scheme (3) in dealing with the general public (4) as to imply a criminal indifference to civil obligations. *See Botway v. American Int'l Assurance Co. of New York,* 151 A.D.2d 288, 543 N.Y.S.2d 651 (1st Dept 1989); *Royal Globe Ins. Co. v. Chock Full O' Nuts Corp.,* 86 A.D.2d 315, 449 N.Y. S.2d 740 (1st Dept.1982); *Holoness Realty Corp. v. New York Property Ins. Underwriting Ass'n,* 75 A.D.2d 569, 427 N.Y.S.2d 264 (1st Dept.1980); *Cohen v. New York Property Ins. Underwriting Ass'n,* 65 A.D.2d 71, 410 N.Y.S.2d 597 (1978). The Third and Fourth Judicial Departments also subscribe to this view. *See Monroe v. Providence Washington Ins. Co.,* 126 A.D.2d 929, 511 N.Y.S.2d 449 (3d Dept. 1987); *DiBlasi v. Blue Cross of Western New York, Inc.,* 156 A.D.2d 986, 548 N.Y. S.2d 829 (4th Dept.1989).

The Appellate Division, Second Department has recently adopted a contrary view. In *Roldan v. Allstate Ins. Co.,* 149 A.D.2d 20, 544 N.Y.S.2d 359 (2d Dept.1989), an action brought by a person injured in an automobile accident against the driver's insurer, the Appellate Division, Second Department discussed an insured's right to punitive damages against his insurer:

> In *Kurrus v. CNA Ins. Co.,* 115 A.D.2d 593, 496 N.Y.S.2d 255, this court agreed with the decision of the First Department in the *Cohen* case (*supra*), as subsequently reaffirmed by that court in *Royal Globe Ins. Co. v. Chock Full O' Nuts Corp.,* 86 A.D.2d 315, 449 N.Y.S.2d

740, [(1st Dept.1982)] and held that Insurance Law § 2601 does not authorize private actions for punitive damages in order to redress the public wrong involved when an insurer engages in unfair claim practices. Furthermore, the court held that the administrative remedy embodied in Insurance Law § 2601 serves the very same purpose as that which justifies the imposition of punitive damages in private actions, namely, the purpose of deterring conduct which is harmful to the public at large. The court stated that "a cause of action brought pursuant to section 2601 would essentially perform a disciplinary function and, hence, would serve the same purpose as a private right of action for recovery of punitive damages" (*Kurrus v. CNA Ins. Co.*, 115 A.D.2d at 594, 496 N.Y.S.2d 255; *Cosmopolitan Mut. Ins. Co. v. Nassau Ins. Co.*, 99 Misc.2d 1018, 1019, 417 N.Y. S.2d 835) [(1979)].

Following the *Kurrus* case (*supra*), this court stated in *Mavroudis v. State Wide Ins. Co.*, 121 A.D.2d 433, 503 N.Y. S.2d 133, [(2d Dept.1986)] that "claims of persistent unfair settlement practices ... are the exclusive province of the New York State Superintendent of Insurance and may not give rise to an independent cause of action for punitive damages under the rule in *Walker v. Sheldon*"....

[These decisions] reflect the general view that public officers or institutions are better suited than private litigants for the redress of essentially public, rather than private, wrongs, and that the imposition and that the imposition of those administrative or penal sanctions which are available to the State or its public agencies should displace the awarding of punitive damages in private lawsuits as the chief, if not exclusive, method of punishing and deterring misconduct which is aimed at the public in general. In sum, the abolition of punitive damages in actions of this sort has been advocated for this very reason. i.e., that "punishment should be left to the State, not to individuals" (16A Appleman, Insurance Law and Practice § 8879, at 467). We interpret the aforenoted appellate authority as demonstrating that this rationale has in fact been adopted in this State and the rule in New York is that punitive damages may not be awarded in private actions against insurance carriers based upon allegations of the type of misconduct which would fall within the ambit of the statutory definition of "unfair claim settlement practices" pursuant to Insurance Law § 2601....

We conclude that ... [t]he availability of punitive damages in private lawsuits premised on unfair claim practices has been preempted by the administrative remedies available to the Superintendent of Insurance pursuant to Insurance Law § 2601.

544 N.Y.S.2d at 372–73. Although the Second Department asserts that its view of punitive damages in first-party insurance cases is representative of "the general view" in New York, namely, that administrative remedies should displace all private punitive damages remedies, the First Department has expressly refused to extend any such "general view" so as to abrogate the right to maintain a punitive damages claim in a first-party insurance action. *See Holoness Realty Corp., supra,* 427 N.Y. S.2d at 265; *Cohen, supra,* 410 N.Y.S.2d at 601–02. To the extent that *Roldan* refers to and relies on the First Department's decision in *Cohen* to support its determination that a punitive damages claim is precluded by Insurance Law § 2601, review of *Cohen* makes clear that it goes no further than affirming the absence of a private right of action under former Insurance law § 40–d, now Insurance Law § 2601. 410 N.Y.S.2d at 601–03. In *Cohen,* moreover, the First Department expressly declined to abrogate a private right of punitive damages in first-party insurance claims. It instead reaffirmed the strict standard against which such a claim must be measured:

In summarily rejecting plaintiff's damage claim for $500,000 in punitive damages *we do not urge the proposition that an insurance company may not be found liable in a civil suit for such*

*damages.* Rather, we stress the fact that the test for awarding such damages is a strict one, and is not found in the Insurance Law but rather, as already noted, in case law (emphasis added).

*Id.* at 602.

In light of the First Department's reliance upon *Walker* in its refusal to abrogate the right to maintain a claim for punitive damages in first-party insurance actions, *see Cohen, supra,* 410 N.Y.S.2d at 601, and the Third and Fourth Departments' adoption of *Cohen,* the rule enunciated by the Second Department does not now appear to reflect the prevailing New York view but, rather, an extension of existing law. This Court concludes that the Second Department's approach in *Roldan* is a normative one, espousing a rule at variance with established precedent. To adopt *Roldan* would require this Court to speculate as to what New York law may be at some indeterminate point in the future rather than apply New York law as it now stands. In refusing to accept *Roldan* as dispositive of the punitive damages issue now before it, this Court expresses no opinion as to the merit of the view adopted there.

2. Entitlement to Punitive Damages

Under prevailing New York law, plaintiffs' punitive damages claim is sufficient to survive defendant's Rule 12 motion to dismiss for failure to state a claim. At this stage of the litigation, plaintiffs' allege sufficient evidentiary facts to indicate that Nationwide may implement or engender policies and practices among its claim adjustors which violate the New York Insurance Law.

Plaintiffs' allegations of Nationwide's implementation of illegal policy and practice, if proven, would amount to conduct in wanton disregard of its civil obligations, sufficient to sustain a punitive damages claim under *Walker.* Such allegations, based upon deposition testimony of a veteran Nationwide employee which sets forth, at the very least, his understanding of Nationwide policy and practice, are specific, and detailed enough to provide Nationwide adequate notice of plaintiffs' claims. *See Ross v. Bolton,* 904 F.2d 819 (2d Cir.1990). Such allegations of illegal conduct designed to deprive insureds of their right to fair and efficient claim settlement, by their very nature allege palpable public harm sufficient to meet the standard set forth in *Walker.* Considering the allegations of deception going to the essential elements of defendant's business, and the not insubstantial allegations of ultimate evidentiary facts upon which they are based, Nationwide's contention that this is merely a "private contract dispute" and the only question is "how much," [5] simply ignores the allegations at the heart of the proposed amended complaint.

The Court has reviewed the authority relied upon by defendant for the proposition that an insured may not recover punitive damages in a first-party insurance action even where the insurer's breach is willful and without justification. *See, e.g., Monroe v. Providence Washington Ins. Co., supra,* 511 N.Y.S.2d at 451. Although such cases state the law of New York, they are not dispositive in this case. Here, the complaint alleges not only that defendant's breach was willful and unjustified but, construed liberally, that it stemmed from defendant's policy and practice of avoiding its obligations to its insureds under certain circumstances. Such allegations provide ample basis to view this case as within the "public injury" exception to the general rule that punitive damages are unavailable in a first-party insurance action. *See Botway v. American Int'l Assurance Co., supra,* 543 N.Y.S.2d at 652–53; *Cohen, supra,* 410 N.Y.S.2d at 601–02; *cf. Roldan v. Allstate Ins. Co., supra,* 544 N.Y.S.2d at 372 (acknowledging public injury exception but finding it preempted by statute). In

5. The issue over which the parties have the most serious agreement is the valuation of plaintiffs' antiques and other items of intrinsic value. Although Nationwide argues that plaintiffs' antiques are subject to settlement at "actual cash value" rather than at "replacement value", Affidavit of Gerald R. Kirby, sworn to on July 6, 1990, at ¶ 16, Nationwide fails to explain how the actual cash value of an antique differs significantly (if at all) from its replacement value.

holding that plaintiffs allege facts sufficient to establish a scheme which, if proven, would entitle plaintiffs to an award of punitive damages, the Court adopts no position with respect to plaintiffs' likelihood of success on the merits of the punitive damages claim.

II. *Plaintiff's Motion for Partial Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In determining whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and may discharge this burden by demonstrating an absence of evidence supporting the opponent's defenses on which the opponent would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[6] The burden then shifts to the opponent who must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Plaintiffs' motion for partial summary judgment as to liability only on the First Cause of Action (breach of the insurance contract) is unopposed, and is granted with respect to all Section "I" coverage. Policy at 10–12. Plaintiffs have established that the Policy was in full force and effect at the time of their loss, and that the Policy covered damages sustained by fire and its effects to both the Premises and Contents. Nationwide has failed to introduce evidence to create genuine issues of fact as to Policy coverage. The Court specifically finds that under the Policy's Coverage "D" (under Section "I"), governing "Loss of Use," Policy at 4, and on the basis of Hahn's deposition testimony, Deposition of John Hahn at 94–98, plaintiffs are entitled to additional living expense payments until such time as all construction or repairs on the Premises are complete, plaintiffs having established that their inability to return to the Premises stemmed solely from Nationwide's improper refusal to settle the Premises portion of plaintiffs' claim, on which plaintiffs and Nationwide's claim adjustor had reached agreement.

The balance of Plaintiffs' motion for partial summary judgment addressed to the Second Cause of Action (N.Y.Gen.Bus. § 349) and plaintiffs' claim for punitive damages is denied. Although plaintiffs' allegations of fraudulent conduct are sufficient to withstand Nationwide's Rule 12 motion to dismiss, plaintiffs have failed to adduce evidentiary material sufficient to establish the absence of genuine issues of material fact with respect to their General Business Law and punitive damages claims.

## CONCLUSION

For the reasons set forth above, defendant's motion, pursuant to Rules 12(b)(6), 12(c) and 9(b) of the Federal Rules of Civil Procedure, for an order dismissing the complaint, is denied. Plaintiffs cross-motion, pursuant to Rule 15(a), granting them leave to amend their complaint is granted, and the amended complaint shall be deemed served upon defendant as of the date of this order; defendant shall interpose its answer to the amended complaint

6. The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

within the time prescribed by Rule 12(a). Plaintiffs' motion, pursuant to Rule 56(a), granting them partial summary judgment is granted as to the First Cause of Action with respect to liability only and is, in all other respects, denied. The Court shall retain jurisdiction over the First Cause of Action for the purpose of determining plaintiffs' damages.

SO ORDERED.