No. 89-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

DARLENE SCHNEIDER,

Plaintiff and Respondent,

v.

MINNESOTA MUTUAL LIFE
INSURANCE COMPANY, a Minnesota
corporation,

Defendant and Appellant.



APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Carter,
The Honorable Nat Allen, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Thomas M. Monaghan, Lucas & Monaghan, P.C., Miles
City, Montana

For Respondent:

Gary A. Ryder, Forsyth, Montana


Submitted on briefs: August 9, 1990

Decided: February 28, 1991

Filed:

*Clerk*

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Following a bench trial, the District Court of the Sixteenth Judicial District, Carter County, found defendant and appellant, Minnesota Mutual Life Insurance Company, liable on a life insurance policy sold to plaintiff and respondent, Darlene Schneider, and her husband, Jock Schneider. Minnesota Mutual appeals. We affirm.

The following issues are raised on appeal:

1. Did the District Court err in failing to enter judgment in favor of Minnesota Mutual?

2. Did the District Court err in allowing expert testimony?

On March 7, 1983, Jock Schneider renewed his existing loans at the First National Bank of Ekalaka and borrowed an additional $1,500, increasing the total amount of his debt to the Bank to $28,600. At the same time, he applied for insurance coverage in the amount of $20,000 under Minnesota Mutual's Protection Plus program, a group life plan sold through financial institutions to protect the debt of the borrower. At the time of the application, Jock had existing life insurance coverage with Minnesota Mutual in the amount of $30,000.

Dean Parks, vice president of the Bank and a partner in the Ekalaka Insurance Agency, assisted the Schneiders in completing the application by asking Jock questions and typing his responses on the form. Parks had known Jock all of his life and had done business with the Schneiders over the years.

The insurance application contained two questions relating to health:

1. During the last three years, have you been hospitalized or have you consulted a physician or physicians for any reason?

2. Have you ever been treated for or advised that you had any of the following: heart, lung, nervous or kidney disorder, high blood pressure, cancer or tumor, diabetes?

The application requested additional information if the applicant answered "yes" to either question. Jock answered "no" to both questions. His wife, Darlene, answered "yes" to the first question and provided information regarding the removal of a cyst in 1983.

On March 23, 1983, Jock died of a gunshot wound to the head. A coroner's jury determined that the death was accidental. The District Court in the present civil case found that the death was not related to alcohol.

Minnesota Mutual promptly paid the claims on the life insurance policies procured by Jock prior to the 1983 policy at issue in this case. It did not, however, automatically pay on the 1983 Protection Plus Policy. Instead, because the effective date of coverage on the 1983 policy was within two years of the date of death, the insurance company invoked the contestability clause in the policy and conducted a routine investigation of Jock's medical history.

During the investigation, Minnesota Mutual obtained the medical records of Dr. Stephen Shaub of Ekalaka. The records showed that Dr. Shaub had seen Jock several times between December 2, 1981 and June 21, 1982. On December 2, 1981, Dr. Shaub diagnosed Jock as suffering from alcoholism and depression. He prescribed medication for the ailments. Follow-up visits occurred

3

on January 4, January 18, and February 16, 1982 to check medication. On April 26, 1982, the doctor once again assessed Jock's condition as alcoholism and depression. Medication was refilled on June 21, 1982.

On June 20, 1983, Minnesota Mutual sent Darlene a letter rejecting her claim for benefits under the $20,000 policy because Jock had failed to disclose the visits to Dr. Shaub in the insurance application. Minnesota Mutual wrote:

> After careful consideration, we have determined that if this additional information [the visits to Dr. Shaub] had been available to our underwriters at the time they were considering your husband's application for this insurance, they would have declined to insure him.

Darlene instituted this action against Minnesota Mutual, alleging breach of contract for failing to pay the claim. She additionally sought punitive damages on several theories. The District Court bifurcated the action and a bench trial proceeded on the contract issue only. Following trial, the court entered findings of fact, conclusions of law and judgment in favor of Darlene. The court then certified the judgment as final pursuant to Rule 54(b), M.R.Civ.P. This appeal followed.

I.

Did the District Court err in failing to enter judgment in favor of Minnesota Mutual?

Minnesota Mutual argues that § 33-15-403, MCA, allows it to deny Darlene's claim because Jock incorrectly completed the insurance application by failing to reveal the visits to Dr. Shaub. Section 33-15-403, MCA, provides:

4

(1) All statements and descriptions in any application for an insurance policy or annuity contract or in negotiations therefor by or in behalf of the insured or annuitant shall be deemed to be representations and not warranties.

(2) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) fraudulent;

(b) material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Minnesota Mutual contends, and Darlene concedes, that this statute should be read in the disjunctive. Thus, a misrepresentation, omission, concealment of fact or incorrect statement will prevent recovery under an insurance policy if one of the three factors listed in subsection (2) is present.

Both parties agree that Jock's failure to notify Minnesota Mutual of his visits to Dr. Shaub constituted a misrepresentation, omission, concealment of facts or incorrect statement as specified in the statute. Darlene maintains, however, that Jock's false answer on the insurance application does not prevent recovery because it was neither fraudulent nor material nor would Minnesota Mutual in good faith have denied the policy had Jock revealed the consultations with the doctor. Minnesota Mutual, on the other hand, argues first that its denial of the claim was justified under

5

§ 33-15-403(2)(a), MCA, because Jock's concealment of the facts constituted fraud.

The District Court found that Minnesota Mutual did not carry its burden of proving that Jock fraudulently completed the application. We hold that this finding is not clearly erroneous.

Minnesota Mutual next argues that the information Jock omitted on the application was material.

The requirement that a misrepresentation on an insurance application be "material either to the acceptance of the risk or the hazard assumed by the insurer" in § 33-15-403(2)(b), MCA, overlaps a great deal with the condition in § 33-15-403(2)(c), MCA, that allows an insurer to deny coverage for a misrepresentation if the insurer in good faith would not have 1) issued the policy; 2) issued the policy in as large an amount; 3) issued the policy at the same premium; or 4) provided coverage with respect to the hazard resulting in the loss.

An omission or misrepresentation may be material if, had the truth been known, the reasonable and prudent insurer would not have issued the policy or would have issued it at a higher premium. Cummings v. Prudential Ins. Co. of America, 542 F. Supp 838, 840 (S.D. Ga. 1982); Prudential Ins. Co. of America v. Anaya, 428 P.2d 640, 644 (N.M. 1967). This definition of materiality incorporates the idea of subsection (2)(c), that is, that the policy would not, among other things, have been issued had the insured revealed the true state of affairs. The primary difference between the two subsections is that (2)(b) deals with an objective standard of

6

materiality, reasonableness, while (2)(c) refers to a subjective standard, good faith.

Minnesota Mutual contends that it justifiably denied coverage under subsection (2)(b) because the diagnosis of alcoholism was material to the risk assumed. The materiality of an insured's misrepresentation is determined by the extent the false answer "initially influenced the insurer to assume the risk of coverage . . . . [T]he misrepresentation in the insurance application may be material if it diminishes the insurer's opportunity to determine or estimate its risk." Berger v. Minnesota Mut. Life Ins. Co. of St. Paul, Minn., 723 P.2d 388, 391 (Utah 1986). Thus, the materiality of a misrepresentation generally is measured at the time the insurer issues the policy rather than at the time of the insured's death. Berger, 723 P.2d at 391.

The question of materiality is a question of fact. Berger, 723 P.2d at 392. In this case, the District Court found that Jock's incorrect statement on the insurance application was not material. This finding is not clearly erroneous.

As the District Court pointed out, the Protection Plus group life insurance application failed to ask any specific questions about either alcoholism or alcohol use. The court surmised that the prudent insurer would have specifically requested information about all critical underwriting factors. Thus, if alcoholism was indeed material to Minnesota Mutual's acceptance of the risk, it would have expressly asked questions about alcohol use, just as it specifically requested information about heart, lung, nervous or

7

kidney disorders, high blood pressure, cancer and diabetes. Other courts have reached a similar conclusion. Botway v. American Int'l Assurance Co. of New York, 543 N.Y.S.2d 651, 652 (N.Y. App. Div. 1989); Kampfe v. Minnesota Mut. Life Ins. Co., C.V. 82-21-BLG, slip op. at 11-12 (E.D. Mont. 1983).

Minnesota Mutual's employees testified that alcohol use was material to the decision to accept the risk because the company automatically denied coverage to any applicant who had been diagnosed as an alcoholic and had been drinking within the five years preceding the application. This practice, however, was not reduced to writing in the underwriters' manual, although other procedures regarding alcohol habits were included in the manual.

Substantial credible evidence supported the District Court's finding that alcohol use was not material to the risk assumed by Minnesota Mutual in this case. The District Court did not err in concluding that Minnesota Mutual's denial of coverage was not warranted under § 33-15-403(2)(b), MCA.

Minnesota Mutual also argues that it legitimately denied coverage under subsection (2)(c) because it would not in good faith have insured Jock if it had known that he had been diagnosed as an alcoholic.

Like the question of materiality, the question of good faith is a question of fact. The District Court concluded that Minnesota Mutual did not exercise good faith in reviewing the claim because it conducted only a limited investigation of the facts regarding Jock's alcohol use and that this investigation was conducted for

8

the sole purpose of denying the claim. It also found that Minnesota Mutual failed to follow its own underwriting criteria for applicants who use alcohol. These findings are not clearly erroneous.

Minnesota Mutual's underwriting manual provided:

> A history of current acute alcoholism, delirium tremens and/or alcoholic psychoses is <u>usually</u> RNA [risk not acceptable]. (Emphasis added.)

Despite this provision in the manual, a Minnesota Mutual underwriter testified that the company automatically rejected the application of anyone who had been diagnosed as an alcoholic.

In addition, the underwriting manual required underwriters to "[l]ook for the effects on business reputation and acumen, financial standing, home environment, social behavior and alcohol dependence" when investigating an applicant's drinking habits to determine insurability. Minnesota Mutual neglected to conduct such an inquiry. Instead, it relied solely on Dr. Shaub's medical records to deny coverage. Dr. Shaub, however, in his deposition introduced at trial admitted that he was not an expert on alcoholism and that Jock did not exhibit any of the physical symptoms of the disease. A chemical dependency counselor testified that there was not enough information in the medical records to determine whether Jock was an alcoholic. From this evidence, the District Court could have properly concluded that had Minnesota Mutual followed its own manual it would have discovered the extent of Jock's problem and may have issued the policy in spite of his alcohol use.

The District Court did not abuse its discretion in concluding that Minnesota Mutual could not deny coverage under the good faith provision of § 33-15-403(2)(c), MCA. Substantial credible evidence supported the finding that Minnesota Mutual conducted only a limited investigation before rejecting Darlene's claim, an investigation that did not comply with the insurer's own written procedures.

## II.

Did the District Court err in allowing expert testimony?

At trial, Darlene offered the expert testimony of Russell Mann, a chartered life underwriter with 23 years experience in the life insurance industry and past president of the Montana State Association of Life Underwriters. Minnesota Mutual objected several times to the testimony, arguing that Mann was not qualified to comment on home-office underwriting practices in general or the practices of Minnesota Mutual in particular. The District Court overruled the objections.

The trial court retains broad discretion to determine whether a witness qualifies as an expert in a particular field. The degree of those qualifications "affects the weight rather than the admissibility of [the expert's] testimony." Little v. Grizzly Mfg., 195 Mont. 419, 427, 636 P.2d 839, 843 (1981).

In this case, the District Court did not abuse its discretion in allowing Mann's testimony. Mann's qualifications and testimony demonstrated that he had worked with many types of products sold by the life insurance industry and that he was familiar with the

factors considered by an underwriter when determining the insurability of an applicant for life insurance. Under these circumstances, the fact that he had never been a home-office underwriter went to the weight rather than to the admissibility of the evidence.

An expert need not have been employed by the defendant insurance company before he can comment on the practices of that company. As long as the testimony indicates that the expert has knowledge of the standards and practices of the insurance industry in general, his testimony is admissible to explain the custom of the industry. John Hancock Mut. Life Ins. Co. v. Conway, 240 S.W.2d 644, 646 (Ky. 1951).

### III.

Darlene requests an award of attorney fees incurred on this appeal under either Rule 32, M.R.App.P., or Rule 33, M.R.App.P. We decline to grant such an award.

Rule 32, M.R.App.P., allows damages for appeals taken without merit. Damages are not warranted, however, whenever a reasonable ground for appeal exists. Tope v. Taylor, 135 Mont. 124, 132, 768 P.2d 845, 850 (1988). In this case, Minnesota Mutual had reasonable grounds for appeal. The questions presented on the appeal were not clear cut but delved into an area in which there is very little Montana decisional law.

Rule 33, M.R.App.P., provides for costs on appeal to the prevailing party. The costs allowed under this rule, however, do not include an award of attorney fees unless the fees are based on

11

a contract, Poulsen's, Inc. v. Wood, 232 Mont. 411, 417, 756 P.2d 1162, 1166 (1988), or a specific statute. In this case, no contract or statute granting attorney fees exists.

The judgment of the District Court is affirmed and Darlene's request for attorney fees on appeal is denied.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

**DARLENE SCHNEIDER,**
**Plaintiff and Respondent,**
**v.**
**MINNESOTA MUTUAL LIFE**
**INSURANCE COMPANY, a Minnesota**
**corporation,**
**Defendant and Appellant.**

No. 89-574.
Submitted on briefs Aug. 9, 1990.
Decided Feb. 28, 1991.
48 St.Rep. 224.
____ Mont. ____.
____ P.2d ____.

INSURANCE, Appeal from finding that insurance company was liable on policy sold to plaintiff where deceased was later found to have unreported visits to doctor and suspected alcoholism. The Supreme Court held:

1. An omission or misrepresentation may be material if, had the truth been known, the reasonable and prudent insurer would not have issued the policy or would have issued it at a higher premium.

2. An expert need no have been employed by the defendant insurance company before he can comment on the practices of that company.

3. Damages are not warranted where a reasonable ground for appeal exists.

Appeal from the District Court of Carter County.
Sixteenth Judicial District.
Honorable Nat Allen, Judge presiding.

For Appellant: Thomas M. Monaghan, Lucas & Monaghan, P.C., Miles City

For Respondent: Gary A. Ryder, Forsyth

Affirmed.

JUSTICE HUNT delivered the Opinion of the Court.

Following a bench trial, the District Court of the Sixteenth Judicial District, Carter County, found defendant and appellant, Minnesota Mutual Life Insurance Company, liable on a life insurance policy sold to plaintiff and respondent, Darlene Schneider, and her husband, Jock Schneider. Minnesota Mutual appeals. We affirm.

The following issues are raised on appeal:

1. Did the District Court err in failing to enter judgment in favor of Minnesota Mutual?

2. Did the District Court err in allowing expert testimony?

On March 7, 1983, Jock Schneider renewed his existing loans at the First National Bank of Ekalaka and borrowed an additional $1,500, increasing the total amount of his debt to the Bank to $28,600. At the same time, he applied for insurance coverage in the amount of $20,000 under Minnesota Mutual's Protection Plus program, a group life plan sold through financial institutions to protect the debt of the borrower. At the time of the application, Jock had existing life insurance coverage with Minnesota Mutual in the amount of $30,000.

Dean Parks, vice president of the Bank and a partner in the Ekalaka Insurance Agency, assisted the Schneiders in completing the application by asking Jock questions and typing his responses on the form. Parks had known Jock all of his life and had done business with the Schneiders over the years.

The insurance application contained two questions relating to health:

"1. During the last three years, have you been hospitalized or have you consulted a physician or physicians for any reason?

"2. Have you ever been treated for or advised that you had any of the following: heart, lung, nervous or kidney disorder, high blood pressure, cancer or tumor, diabetes?"

The application requested additional information if the applicant answered "yes" to either question. Jock answered "no" to both questions. His wife, Darlene, answered "yes" to the first question and provided information regarding the removal of a cyst in 1983.

On March 23, 1983, Jock died of a gunshot wound to the head. A coroner's jury determined that the death was accidental. The District Court in the present civil case found that the death was not related to alcohol.

Minnesota Mutual promptly paid the claims on the life insurance policies procured by Jock prior to the 1983 policy at issue in this case. It did not, however, automatically pay on the 1983 Protection Plus Policy. Instead, because the effective date of coverage on the 1983 policy was within two years of the date of death, the insurance company invoked the contestability clause in the policy and conducted a routine investigation of Jock's medical history.

During the investigation, Minnesota Mutual obtained the medical records of Dr. Stephen Shaub of

Ekalaka. The records showed that Dr. Shaub had seen Jock several times between December 2, 1981 and June 21, 1982. On December 2, 1981, Dr. Shaub diagnosed Jock as suffering from alcoholism and depression. He prescribed medication for the ailments. Follow-up visits occurred on January 4, January 18, and February 16, 1982 to check medication. On April 26, 1982, the doctor once again assessed Jock's condition as alcoholism and depression. Medication was refilled on June 21, 1982.

On June 20, 1983, Minnesota Mutual sent Darlene a letter rejecting her claim for benefits under the $20,000 policy because Jock had failed to disclose the visits to Dr. Shaub in the insurance application. Minnesota Mutual wrote:

"After careful consideration, we have determined that if this additional information [the visits to Dr. Shaub] had been available to our underwriters at the time they were considering your husband's application for this insurance, they would have declined to insure him."

Darlene instituted this action against Minnesota Mutual, alleging breach of contract for failing to pay the claim. She additionally sought punitive damages on several theories. The District Court bifurcated the action and a bench trial proceeded on the contract issue only. Following trial, the court entered findings of fact, conclusions of law and judgment in favor of Darlene. The court then certified the judgment as final pursuant to Rule 54(b), M.R.Civ.P. This appeal followed.

## I.

Did the District Court err in failing to enter judgment in favor of Minnesota Mutual?

Minnesota Mutual argues that § 33-15-403, MCA, allows it to deny Darlene's claim because Jock incorrectly completed the insurance application by failing to reveal the visits to Dr. Shaub. Section 33- 15-403, MCA, provides:

"(1) All statements and descriptions in any application for an insurance policy or annuity contract or in negotiations therefor by or in behalf of the insured or annuitant shall be deemed to be representations and not warranties.

"(2) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

"(a) fraudulent;

"(b) material either to the acceptance of the risk or to the hazard assumed by the insurer; or

"(c) the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

Minnesota Mutual contends, and Darlene concedes, that this statute should be read in the disjunctive. Thus, a misrepresentation, omission, concealment of fact or incorrect statement will prevent recovery under an insurance policy if one of the three factors listed in subsection (2) is present.

Both parties agree that Jock's failure to notify Minnesota Mutual of his visits to Dr. Shaub constituted a misrepresentation, omission, concealment of facts or incorrect statement as specified in the statute. Darlene maintains, however, that Jock's false answer on the insurance application does not prevent recovery because it was neither fraudulent nor material nor would Minnesota Mutual in good faith have denied the policy had Jock revealed the consultations with the doctor. Minnesota Mutual, on the other hand, argues first that its denial of the claim was justified under § 15-403 (2)(a), MCA, because Jock's concealment of the facts constituted fraud.

The District Court found that Minnesota Mutual did not carry its burden of proving that Jock fraudulently completed the application. We hold that this finding is not clearly erroneous.

Minnesota Mutual next argues that the information Jock omitted on the application was material.

The requirement that a misrepresentation on an insurance application be "material either to the acceptance of the risk or the hazard assumed by the insurer" in § 33-15-403(2)(b), MCA, overlaps a great deal with the condition in § 33-15-403(2) (c), MCA, that allows an insurer to deny coverage for a misrepresentation if the insurer in good faith would not have 1) issued the policy; 2) issued the policy in as large an amount; 3) issued the policy at the same premium; or 4) provided coverage with respect to the hazard resulting in the loss.

[1] An omission or misrepresentation may be material if, had the truth been known, the reasonable and prudent insurer would not have issued the policy or would have issued it at a higher premium. Cummings v. Prudential Ins. Co. of America, 542 F. Supp. 838, 840 (S.D. Ga. 1982); Prudential Ins. Co. of America v. Anaya, 428 P.2d 640, 644 (N.M. 1967). This definition of materiality incorporates the idea of subsection (2)(c), that is, that the policy would not,

among other things, have been issued had the insured revealed the true state of affairs. The primary difference between the two subsections is that (2)(b) deals with an objective standard of materiality, reasonableness, while (2)(c) refers to a subjective standard, good faith.

Minnesota Mutual contends that it justifiably denied coverage under subsection (2) (b) because the diagnosis of alcoholism was material to the risk assumed. The materiality of an insured's misrepresentation is determined by the extent the false answer "initially influenced the insurer to assume the risk of coverage.... [T]he misrepresentation in the insurance application may be material if it diminishes the insurer's opportunity to determine or estimate its risk." Berger v. Minnesota Mut. Life Ins. Co. of St. Paul, Minn., 723 P.2d 388, 391 (Utah 1986). Thus, the materiality of a misrepresentation generally is measured at the time the insurer issues the policy rather than at the time of the insured's death. *Berger*, 723 P.2d at 391.

The question of materiality is a question of fact. *Berger*, 723 P.2d at 392. In this case, the District Court found that Jock's incorrect statement on the insurance application was not material. This finding is not clearly erroneous.

As the District Court pointed out, the Protection Plus group life insurance application failed to ask any specific questions about either alcoholism or alcohol use. The court surmised that the prudent insurer would have specifically requested information about all critical underwriting factors. Thus, if alcoholism was indeed material to Minnesota Mutual's acceptance of the risk, it would have expressly asked questions about alcohol use, just as it specifically requested information about heart, lung, nervous or kidney disorders, high blood pressure, cancer and diabetes. Other courts have reached a similar conclusion. Botway v. American Int'l Assurance Co. of New York, 543 N.Y.S.2d 651, 652 (N.Y. App. Div. 1989); Kampfe v. Minnesota Mut. Life Ins. Co., C.V. 82-21-BLG, slip op. at 11-12 (E.D. Mont. 1983).

Minnesota Mutual's employees testified that alcohol use was material to the decision to accept the risk because the company automatically denied coverage to any applicant who had been diagnosed as an alcoholic and had been drinking within the five years preceding the application. This practice, however, was not reduced to writing in the underwriters' manual, although other procedures regarding alcohol habits were included in the manual.

Substantial credible evidence supported the District Court's finding that alcohol use was not material

to the risk assumed by Minnesota Mutual in this case. The District Court did not err in concluding that Minnesota Mutual's denial of coverage was not warranted under § 33-15-403 (2) (b), MCA.

Minnesota Mutual also argues that it legitimately denied coverage under subsection (2)(c) because it would not in good faith have insured Jock if it had known that he had been diagnosed as an alcoholic.

Like the question of materiality, the question of good faith is a question of fact. The District Court concluded that Minnesota Mutual did not exercise good faith in reviewing the claim because it conducted only a limited investigation of the facts regarding Jock's alcohol use and that this investigation was conducted for the sole purpose of denying the claim. It also found that Minnesota Mutual failed to follow its own underwriting criteria for applicants who use alcohol. These findings are not clearly erroneous.

Minnesota Mutual's underwriting manual provided:

"A history of current acute alcoholism, delirium tremens and/or alcoholic psychoses is *usually* RNA [risk not acceptable]." (Emphasis added.)

Despite this provision in the manual, a Minnesota Mutual underwriter testified that the company automatically rejected the application of anyone who had been diagnosed as an alcoholic.

In addition, the underwriting manual required underwriters to "[l]ook for the effects on business reputation and acumen, financial standing, home environment, social behavior and alcohol dependence" when investigating an applicant's drinking habits to determine insurability. Minnesota Mutual neglected to conduct such an inquiry. Instead, it relied solely on Dr. Shaub's medical records to deny coverage. Dr. Shaub, however, in his deposition introduced at trial admitted that he was not an expert on alcoholism and that Jock did not exhibit any of the physical symptoms of the disease. A chemical dependency counselor testified that there was not enough information in the medical records to determine whether Jock was an alcoholic. From this evidence, the District Court could have properly concluded that had Minnesota Mutual followed its own manual it would have discovered the extent of Jock's problem and may have issued the policy in spite of his alcohol use.

The District Court did not abuse its discretion in concluding that Minnesota Mutual could not deny coverage under the good faith provision of § 33-15-403(2) (c), MCA. Substantial credible evidence supported the finding that Minnesota Mutual conducted only a limited investigation before rejecting Darlene's