In the Matter of MEKO HOLDING, INC., et al., Respondents, v DANIEL W. JOY, as Commissioner of the New York City Department of Housing Preservation and Development, Appellant, and 144 EAST 22ND STREET TENANTS ASSOCIATION et al., Intervenors-Appellants.

First Department, March 12, 1985

## APPEARANCES OF COUNSEL

*Jacob B. Ward* of counsel (*Domber & Ward,* attorneys), for respondents.

*Edward L. Klonsky* of counsel (*Karlsson & Ng, P. C.*), for intervenors-appellants.

*Alan W. Ginsberg* and *Stephen H. Deutschmeister* of counsel (*Vincent J. Sama,* attorney), for appellant.

## OPINION OF THE COURT

Motions by respondent-appellant and intervenor-respondent-appellant for reargument or, in the alternative, for leave to appeal to the Court of Appeals from the order of this court entered on November 15, 1984, unanimously affirming, without opinion (105 AD2d 1169), a judgment of the Supreme Court, New York County, entered on August 4, 1983, which, *inter alia,* granted petitioner's petition to the extent of remanding the matter to the Housing Department for implementation of first rents as called for in the Department's order of March 26, 1981, and vacated a subsequent order of the Department, are granted only to the extent of permitting reargument and, upon reargument, this court's order of November 15, 1984 is recalled and vacated and a new order with the following opinion is substituted therefor:

FEIN, J.

This is an appeal from a judgment which, in part, vacated an order of the Rent Commissioner dated July 2, 1982, which had modified an earlier order of the Commissioner dated March 26, 1981. The effect of the judgment was, in part, to reinstate the March 26, 1981 order of the Commissioner.

In November 1971 and again in July 1975, the Rent Commissioner made tenant harassment findings against the prior owners of 144 and 152 East 22nd Street, Manhattan, the buildings involved. It was determined that such landlords' course of conduct had been designed to cause tenants to vacate their apartments. The effect of these harassment findings was to freeze rents (*see,* Housing and Development Administration's Rent and Eviction Regulations § 74 [a]). The prior owners of the buildings actually lost control of the premises as a result of foreclosure proceedings in November 1974. It is conceded that the present landlords, who acquired possession three years later, are unrelated to their predecessors.

Extensive renovations took place on these buildings between 1972 and 1976, resulting in the creation of entirely new apartments. An application was made for the establishment of "first rent[s]" (see, NY City Rent and Eviction Regulations § 21 [b]), but the rents so established by the district rent director in April 1977 were satisfactory to neither the owners nor the tenants. As a result of protests filed by both sides, extensive hearings were held, and the Rent Commissioner issued two rulings in March 1981.

In the first, dated March 2, 1981, the Commissioner denied a request by the present landlords to lift the prior sanctions for harassment. The Commissioner found no evidence that the present landlords were engaged in the same conscious course of conduct as their predecessors which had resulted in the 1971 and 1975 findings of harassment. He further concluded that although the present landlords were "still failing to provide some of the same essential services of which the prior landlords were guilty, the 'harassment' motivation is not present and, therefore, it cannot be said that the present landlords are continuing the courses of conduct of which their predecessors were guilty." Nevertheless, the Commissioner denied the application of the present landlords to vacate those earlier findings of harassment. This was based on a finding that as of June 29, 1979 (the date of the last hearing), there were still "failures of maintenance and operations" similar to those which formed the basis for the harassment findings in 1971 and 1975, thus rendering it "improper to terminate the prior harassment finding sanctions until the landlord can demonstrate both genuine and sincere affirmative efforts and accomplishments in restoring essential services, and also satisfactory adherence to its obligations to provide good maintenance and operations on a regular basis." The Commissioner's ruling was without prejudice to a reapplication for relief from the harassment orders, under Rent and Eviction Regulations § 74 (c), "based on evidence of behavior subsequent to June 29, 1979".

Three and one-half weeks later, on March 26, 1981, after finding a necessity to establish reasonable rents in order to save the new landlords from bankruptcy, the Commissioner permitted the establishment of first rents, retroactive to the first occupancy of each of the apartments in question since their renovation.

Various tenants challenged the March 26, 1981 ruling of the Commissioner in CPLR article 78 proceedings, which resulted in remitting to the Office of Rent and Housing Maintenance for

further consideration of several issues, one of which was the proper effective date of the order adjusting first rents.

On July 2, 1982, the Commissioner issued a ruling modifying his March 26, 1981 order by changing the effective date of the establishment of first rents to March 26, 1981, the date of that prior order, regardless of when those newly renovated apartments first became occupied. The Commissioner this time expressed his duty, in establishing the effective dates of the first rents under New York City Rent and Eviction Regulations § 21 (b), to balance the equities, on the one hand so as to protect the present landlords from the possibility of bankruptcy, and on the other hand to prevent present tenants from having to bear the burden of huge retroactive rent adjustments which in some instances might range to over $11,000. In fixing the date for the establishment of first rents as March 26, 1981, the Commissioner noted that "the fact that the present owners did not establish adequate grounds on which to discharge the harassment orders against the subject properties bears upon the retroactive effect of the rents authorized to be collected."

This order was the subject of the present article 78 proceeding. Special Term ruled that inasmuch as the present owners were not engaging in the same conduct as their predecessors, conduct designed to force the tenants out, there was no basis for a continued finding of harassment by these new owners. Therefore, there was no basis for the July 1982 limitation on the establishment of first rents to March 26, 1981. Special Term concluded that if the primary concern was the economic viability of the buildings, it would have been more reasonable and equitable for the first rents to have been established retroactively to the dates of first occupancy following the alterations, as originally ruled in the Commissioner's order of March 26, 1981. The court further ruled that the present landlords had never been given a fair chance to prove that three of the apartments in question had been voluntarily vacated, thus entitling the landlords to decontrol of these apartments, and they should now have that opportunity. Special Term vacated the Commissioner's July 2, 1982 order and remanded the matter to the Commissioner for implementation of first rents as called for in the March 26, 1981 order.

■ We conclude that the outstanding orders of harassment preclude the establishment of first rents retroactively to dates which, in some circumstances, may have been within the period during which the owners of these buildings were still under existing sanctions for harassment.

The termination of an order finding harassment must be made on formal application, supported by "affirmative proof that the proscribed course of conduct had not been engaged in since the issuance of such order." (NY City Rent and Eviction Regulations § 74 [c].) This regulation is derived from the powers of the City rent agency as set forth in the New York City Rent and Rehabilitation Law (Administrative Code of City of New York § Y 51-1.0 *et seq.*). Administrative Code of the City of New York § Y51-10.0 (d) makes it unlawful for a landlord to use harassing tactics to cause a tenant to vacate the premises or waive any rights of tenancy. Section Y51-11.0 sets forth the penalties for such conduct. Administrative Code § Y51-11.0 (b) (3) provides in pertinent part:

"(a) Subject to the provisions of subparagraph (b) of this paragraph, [the city rent agency may*] make a finding of harassment whenever it determines the existence of a violation of subdivision d of section Y51-10.0 of this title in which event the city rent agency may * * * (iii) refuse to credit any adjustments increasing rent mandated by section Y51-5.0 of this title and dismiss any applications for an adjustment pursuant to said section for such time and under such terms and conditions as the city rent agency deems necessary to prevent circumvention or evasion of the provisions of this title.

"(b) * * * The provisions of this paragraph shall bind all persons or parties who succeed to the landlord's interest in said housing accommodations."

Thus, the controlling law establishes that once a finding of harassment has been issued in the form of an order against a landlord, with sanctions imposed, there is an affirmative duty on that landlord, or his successors, to come forward with convincing evidence that the conditions of harassment which led to those sanctions no longer exist, before the findings can be vacated and the sanctions lifted. Based upon the record of hearings before him, the Rent Commissioner reached the conclusion, in his order of March 2, 1981, that the failure to provide essential services in the form of maintenance and operation of the premises at a satisfactory level, "similar [to the] failures of maintenance and operations [which] were part of the basis for harassment findings in 1971 and 1975", were still in evidence as late as June 29, 1979, the date of the last hearing. The Commissioner concluded that the present landlords did not appear to

---

\* The bracketed words, although included in paragraphs (1) and (2) of subdivision b, are inexplicably omitted (probably an editorial oversight) from paragraphs (3) and (4) of the subdivision.

have a harassment motivation in failing to provide these essential services. While such a conclusion might have been relevant in considering de novo harassment allegations, that was not the case before the Commissioner. Rather, he was considering an application to terminate sanctions for harassment. At least as of June 29, 1979, the new landlords had not borne the burden of improving the conditions brought about by their predecessors to such an extent as to be entitled to a lifting of those sanctions for the earlier findings of harassment. And the Commissioner so ruled.

Relying upon the Commissioner's conclusion, in his March 2, 1981 decision, that the present landlords were displaying no motivation for harassment, Special Term, in reviewing the July 2, 1982 order, gave no weight to the Commissioner's finding that at least as late as June 29, 1979, some of the conditions which led to sanctions against the predecessor landlords for harassment were still in existence. Thus, by allowing first rents to be fixed retroactively, in some cases presumably to dates prior to June 29, 1979, Special Term permitted first rents to be figured from dates when the present landlords were still operating under conditions which did not entitle them to a lifting of the sanctions for harassment imposed upon their predecessors.

The Commissioner's order of July 2, 1982 corrected what he perceived to have been a defect in his earlier order of March 26, 1981. The Commissioner was entitled to deference in interpreting his own regulations. The Commissioner's order of July 2, 1982, demonstrated a reasonable and rational determination which took into consideration the facts that, on the one hand, first rents could not be established for any date prior to June 29, 1979, when residual conditions of harassment were found to have been still in existence, and on the other, an outright refusal to establish first rents for these successor landlords could result in economic catastrophe. The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. (*Matter of Howard v Wyman,* 28 NY2d 434.)

The Commissioner's order of July 2, 1982, constituted a reasonable and rational resolution of the issues.

The Commissioner also ruled on July 2, 1982, that vacancies which occurred in three particular apartments prior to May 1977 (apartment 3G at 144 E. 22nd Street, and apartments 4C and 6A at 152 E. 22nd Street) were the result of harassing conduct on the part of the landlords, or at least the continuing effects of harassment resulting from their mismanagement of

the premises. The landlords, he noted, had not made the necessary affirmative showing to the contrary, i.e., that these apartments had been voluntarily vacated. Consequently, the Commissioner ordered the establishment of maximum (controlled) rents for those apartments.

■ Special Term ruled that the Commissioner had not given the present landlords a fair opportunity to present evidence to show that these apartments had been voluntarily vacated, and remanded accordingly for reconsideration of the claim for decontrol. Inasmuch as these apartments would normally be considered to have been vacancy decontrolled, the landlords should have been given an opportunity to rebut the Commissioner's presumption that the vacating of the apartments was instead the result of harassment. We, therefore, agree with Special Term's remand for this purpose.

Accordingly, the judgment, Supreme Court, New York County (Ascione, J.), entered on August 4, 1983, should be modified, on the law and the facts, to the extent of striking the first and fourth decretal paragraphs, the petition should be granted only to the extent of remanding to the New York State Division of Housing and Community Renewal, successor to the Rent Commissioner, for reconsideration of the issue of vacancy decontrol of apartment 3G at 144 E. 22nd Street and apartments 4C and 6A (reflected as "5A" in the judgment and opinion at Special Term) at 152 E. 22nd Street, and the Rent Commissioner's order of July 2, 1982, should be reinstated insofar as it directs the establishment of first rents retroactively to March 26, 1981, and the judgment should otherwise be affirmed, without costs.

SULLIVAN, J. P., BLOOM and KASSAL, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on August 4, 1983, unanimously modified, on the law and the facts, to the extent of striking the first and fourth decretal paragraphs thereof, the petition granted only to the extent of remanding to the New York State Division of Housing and Community Renewal, successor to the Rent Commissioner, for reconsideration of the issue of vacancy decontrol of apartment 3G at 144 E. 22nd Street and apartments 4C and 6A (reflected as "5A" in the judgment and opinion at Special Term) at 152 E. 22nd Street, and the Rent Commissioner's order of July 2, 1982, is reinstated insofar as it directs the establishment of first rents retroactively to March 26, 1981 and the order and judgment is otherwise affirmed, without costs and without disbursements. The order of this court entered on November 15, 1984 [appeal No. 21310] is recalled and vacated.