OPINION OF THE COURT
Kristin Booth Glen, J.
This is a motion brought by the People of the State of New York by Attorney-General Robert Abrams and by the Superintendent of Insurance of New York State pursuant to Executive Law § 63 (2), Insurance Law § 327 and General Business Law § 349. It seeks to preliminarily enjoin respondents from conducting an insurance business within New York without a license, from acting as insurance brokers and from engaging in fraudulent and deceptive practices. Petitioners also seek fines and costs. Respondents British and American Casualty (BAG), British and American Management Corp. (BAM), PRO-MARK, Stephen Weicholz and John Does cross-move pursuant to CPLR 3211 (a) (8) to dismiss the petition for lack of in personam jurisdiction. Respondents additionally contend that they are exempt from regulation pursuant to Insurance Law § 1101 (b) (2) (E).
The motion and cross motion raise important questions of first impression as to the State’s power to regulate out-of-State and off-shore insurers, the constitutionally permissible limits of jurisdiction, and the interpretation of Insurance Law § 1101.
FACTS
British and American Casualty (BAG) is an alien insurer organized and authorized under the laws of the Government of Tortolla, British Virgin Islands; British American Management (BAM) is a Florida corporation, and PROMARK was a New York corporation licensed as an insurance broker in New York until October 1985. Stephen Weicholz is president of BAG and BAM and John Does are unknown officers and directors of BAG, BAM and PROMARK.
From 1978 to 1983, BAG was an alien insurer underwriting excess property and casualty insurance in New York. This business was conducted in compliance with 11 NYCRR 27.5 under which BAG maintained a trust fund of $1,500,000 in New York State for protection of policyholders and beneficiaries.
In 1983, BAG terminated its "direct” and excess underwriting business in New York. However, BAG continued to serve *354 as reinsurer for Union Indemnity Insurance Company (Union) and later for another company, American Fidelity Fire Insurance (AFF). Weicholz, the president and 75% shareholder of BAG, acted as general agent for Union, procuring dental malpractice business through PROMARK, a licensed broker. Union is now in liquidation. Shortly after Union was placed into rehabilitation, Weicholz became general agent of AFF, and the dental malpractice business of Union was transferred to AFF. However, as of September 6, 1985, AFF is in rehabilitation.
In October 1985, Weicholz, through BAM, purchased the stock of PROMARK in an effort to have BAG directly underwrite AFF’s malpractice policies. As of the date of purchase, however, PROMARK’s broker’s license expired and it ceased doing business in New York. Nevertheless, in October and November 1985, BAM sent solicitation letters to dentists who had been insured by Union and AFF, using the same logo formerly used by PROMARK. The solicitation letters state that PROMARK is a "financially stable carrier” and refers to "the establishment of a trust fund”.
This proceeding was commenced by order to show cause in January 1985. A temporary restraining order signed on January 3, 1985 has been continued by this court pending determination of the instant motion.
PERSONAL JURISDICTION — THE STATUTORY SCHEME
Insurance Law § 1101 is the relevant statutory provision as to what constitutes doing an insurance business for both regulatory and jurisdictional purposes. The statute specifically provides that certain acts "effected by mail from outside this state” shall constitute doing business "within the meaning of section three hundred two of the civil practice law and rules” (Insurance Law § 1101 [b] [1]). Included in the certain acts which will constitute doing business under this statute are: making or proposing to make as insurer any insurance contract including issuance or delivery of a policy to a New York State resident or solicitation of applications for any such policies. (Insurance Law § 1101 [b] [1] [A].) Petitioner has demonstrated that respondents’ conduct falls within the statute and exceeds this threshold so to confer jurisdiction for this action.[1]
*355 Respondents have conceded in their cross motion papers that BAG and PROMARK solicited to underwrite dental malpractice insurance policies for New York dentists by mailing letters to dentists on October 22, 1985 and November 22, 1985. Petitioners attached sample solicitation letters as exhibits to their petition. Clearly, respondents have engaged in mail order solicitation for section 1101 (b) (1) (A) purposes. Petitioners point out that these letters are actually more than solicitation, since they indicate that insurance coverage will be automatically continued unless the dentist takes action to cancel the policy. Moreover, the letter gives New York dentists an "800” toll-free number in Florida to call with questions. Petitioners have set forth sufficient evidence to meet the burden of demonstrating the unlicensed insurance activities in New York by respondents. These activities fall within the ambit of Insurance Law § 1101 (b) (1) and CPLR 302 for jurisdictional purposes.
Further, the legislative history to this provision of the Insurance Law clearly indicates that the law’s intent was to extend the jurisdiction of New York courts to out-of-State insurance companies doing a mail order business in New York. "This bill will enable the Insurance Department to regulate out-of-state insurers doing a mail order business here and will give the Department appropriate 'long-arm’ jurisdiction to enforce its regulations. As a result, out-of-state companies doing mail order insurance in New York will be subject to the same requirements and inspection to which other insurance companies selling to New York consumers are now subject. The extension of jurisdiction provided in this measure will also aid New Yorkers in collecting claims from these out-of-state companies by opening the New York courts to such matters.” (Governor’s mem, 1970 McKinney’s Session Laws of NY, at 3091.) The unambiguous intention of this legislation was to extend New York State’s jurisdiction over companies engaging in the very insurance practices pursued by respondents.
Even looking directly to CPLR 302 (a) (1) respondents are clearly transacting business for jurisdictional purposes. Contrary to respondents’ argument, the facts alleged do not amount to "mere solicitation”. Rather, the acts here, taken in totality, show purposeful activity within New York sufficient to form minimum contacts. (Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443 [1965]; Chemco Intl. Leasing v Meridian Eng., 590 F Supp 539 [US Dist Ct SDNY 1984].) *356 Respondents have sent binders and policies in addition to solicitation letters to New York dentists; they agree to arrange for legal representation by New York counsel; they provide a toll-free number for problems and inquiries. The sum of their contacts in New York may well be sufficient to establish CPLR 302 jurisdiction even without Insurance Law § 1101 (b). In any event "mere solicitation” is enough for jurisdiction under section 1101 (b) (l)-[2]
Finally, a finding of jurisdiction over respondents does not offend constitutional due process standards or traditional notions of fair play and substantial justice. (McGee v International Life Ins. Co., 355 US 220 [1957].) Moreover, the New York Court of Appeals has held that the test of doing business in the State for regulatory purposes may be relaxed when the public safety or interest is involved. "Where the purpose of the proceeding is to protect the citizens of the State from potentially dangerous consequences, less is required than might otherwise be the case.” (Matter of La Belle Creole Intl. v Attorney-General of State of N. Y., 10 NY2d 192, 198 [1961]; Matter of State of New York v Colorado State Christian Coll. of Church of Inner Power, 76 Misc 2d 50 [Sup Ct, NY County 1973].) Just as in Colorado, the conclusion that respondent is transacting business is "more compelling here in this proceeding by the State, as against a private citizen.” (Matter of State of New York v Colorado State Christian Coll. of Church of Inner Power, supra, p 52.) Accordingly, the motion to dismiss based on lack of jurisdiction is denied.
*357 INSURANCE LAW § 1101 (b) (2) (E)—
THE EXCEPTION
Respondents argue strenuously that they fall within an exception to the insurance statute for foreign or alien insurers as defined in section 1101 (b) (2) (E). That section operates as a narrow exception to section 1101 (b) (1), providing that certain acts shall not constitute doing an insurance business in New York if effected by mail from outside the State by an unauthorized insurer duly licensed to transact insurance by the laws of its domicile. The statute provides in relevant part:
"(2) Notwithstanding the foregoing, the following acts or transactions, if effected by mail from outside this state by an unauthorized foreign or alien insurer duly licensed to transact the business of insurance in and by the laws of its domicile, shall not constitute doing an insurance business in this state, but section one thousand two hundred thirteen of this chapter shall nevertheless be applicable to such insurers * * *
"(E) transactions with respect to policies of insurance on risks located or resident within or without this state (except master policies or contracts of group insurance which are subject to the requirements of subparagraph (B) hereof), which policies are principally negotiated, issued and delivered without this state in a jurisdiction in which the insurer is authorized to do an insurance business” (emphasis added).
Respondents contend that they are exempt from New York insurance regulations because they are licensed to do business in Tortolla and are authorized to do business in Alabama and Washington, D. C. Further, respondents contend that the policies mailed from those locations are "negotiated, issued and delivered” outside of New York thereby placing them within the section 1101 (b) (2) (E) exception. These arguments fail on several grounds.
First, respondents have failed to prove that they are authorized and licensed to do business in Alabama or Washington, D. C. The affidavit of an Alabama insurance broker which respondents have attached to their papers, saying that respondent is authorized to do insurance in Alabama is contradicted by a statement from the Alabama Insurance Department’s Chief Examiner that BAG is not licensed, has no status in the State, and is not an authorized surplus lines company. Petitioners have also provided a statement from the Washington, D. C. Insurance Superintendent that BAG is not licensed. Respondents have conceded that they are not licensed in *358 either State and they have put forth no proof that they are otherwise authorized. On the contrary, the insurance departments of both States have stated that BAG is not licensed or authorized to do insurance business in those jurisdictions. Thus, with respect to mail order insurance business from Alabama and Washington, D. C., respondents’ cross motion is denied. Business conducted by mail from Alabama or Washington, D. C., is not exempt from regulation by Insurance Law § 1101 (b) (2) (E).
Respondent has conceded that it is not licensed or authorized to do business in Florida, the State with which this motion was initially concerned. Thus, activity conducted from Florida is clearly not protected by section 1101 (b) (2) (E).
TORTOLLA, BRITISH VIRGIN ISLANDS
Upon oral application, the parties agreed that the court could decide whether respondent’s activities from Tortolla, where it is duly organized and licensed, falls within the Insurance Law § 1101 (b) (2) (E) exception. The key issue here is whether the mail order business as conducted by respondent is "principally negotiated, issued and delivered without this state” (Insurance Law § 1101 [b] [2] [E]). Based upon rules of statutory construction and upon the legislative history of section 1101, I find the exception does not apply to respondent’s Tortolla mail order business, even though it is authorized to do business in Tortolla.
The legislative history shows a clear intent to bring mail order insurance business within the scope of New York regulatory powers in order to protect New York resident insurance consumers. (See, 1970 McKinney’s Session Laws of NY, at 2898, 3091.) This protection would be completely undercut if unauthorized, out-of-State insurers could continue to underwrite insurance for New York residents by mailing applications and policies to New York from any other jurisdiction where it was authorized. It seems more likely and reasonable that section 1101 (b) (2) (E) was intended to cover only the situation in which New York residents literally leave the State to contract for insurance, and the policy is physically delivered out of New York. If Insurance Law § 1101 (b) (2) (E) were read to exempt respondent’s mail order business from Tortolla from regulation, the protection created in Insurance Law § 1101 (b) (1) (A) would be rendered meaningless. Such interpretation is contrary to basic rules of statutory construe *359 tion. (United States v Blasius, 397 F2d 203 [2d Cir 1968], cert dismissed 393 US 1008.)
Respondents urge that according to black letter contract law, a policy or contract for insurance is "delivered” at the place where it was mailed (Hyde v Goodnow, 3 NY 267 [1850]; Jones v Metropolitan Life Ins. Co., 158 Misc 466 [App Term, 1st Dept 1936]; Hammond v International Ry. Co., 63 Misc 2d 437 [Sup Ct, Erie County 1909]), and, accordingly, that their policies are in fact "negotiated, issued and delivered” in Tortolla, bringing them within section 1101 (b) (2) (E).
Reliance on this body of law is, however, inapposite. Cases establishing the technical meaning of "delivery” for contract purposes are not controlling in the context of State regulation of foreign insurance companies. In Zogg v Penn Mut. Life Ins. Co. (276 F2d 861 [2d Cir I960]), the Second Circuit rejected the mechanistic contract definition of "delivery” when used in the insurance law context, where the primary statutory purpose was to protect New York residents. "Equally necessary to effectuate the statutory purpose is a construction of 'delivery’ as the equivalent of manual receipt, rather than as referring to the mere deposit of the policy in the mail” (Zogg v Penn Mut. Life Ins. Co., supra, p 865). A line of United States Supreme Court cases similarly hold that conceptualistic theories of contract law on the "place of performance” are inapposite where the State has substantial interests in regulating foreign insurance business with its residents. (Hoopestan Co. v Cullen, 318 US 313, 316-317 [1943]; Travelers Health Assn. v Virginia, 339 US 643 [1950].) Thus, the definition of delivery for section 1101 (b) (2) (E) is not limited to the technical contract one of "place where mailed” but rather is construed more broadly in a way that makes sense of the entire statutory scheme.
Further support for this broad nontechnical interpretation of "delivery” for section 1101 (b) (2) (E) may be found in the practice of the New York State Insurance Department, which has, since enactment of the law, construed "delivery” as meaning physically delivered to the insured. The section 1101 (b) (2) (E) exception has been regarded by the Insurance Department as a recognition of the rights of New York residents to travel outside New York to contract for insurance with foreign carriers. The courts will defer to the view of the agency responsible for enforcing the statute where this view is entirely reasonable, as it is here. (Matter of American Tr. Ins. Co. v Corcoran, 65 NY2d 828 [1985], affd on opn below 105 *360 AD2d 30 [1st Dept 1984]; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451 [1980]; Matter of Meko Holding v Joy, 107 AD2d 278 [1st Dept 1985].)
Respondents have mailed applications into New York. New York dentists receive binders and policies in New York and pay premiums from New York. Respondents do not allege that dentists travel to Tortolla to contract foreign insurance. Thus, given the statutory considerations discussed above, the business from Tortolla is not principally "negotiated, issued and delivered” out of the State and the exception does not apply.[3]
PRELIMINARY INJUNCTION
In order to obtain a preliminary injunction, petitioners must demonstrate a likelihood of success on the merits, irreparable injury and a balance of the equities in their favor (CPLR 6301; Kaufman v International Business Machs. Corp., 97 AD2d 925, affd 61 NY2d 930 [1984]). Petitioners have met all three requirements. No defense has been asserted to the claims raised in the petition other than that resting on Insurance Law § 1101 (b) (2) (E). Respondents have not alleged compliance with Insurance Law § 307 (reporting financial stability), section 1102 (license requirements), section 1106 (additional requirements for foreign or alien insurers), section 2102 (agent or broker license requirement), section 2117 (aiding or acting for an unlicensed or unauthorized insurer), or section 2603 (circulating false literature). Petitioners have set forth allegations and evidence to support each of these claims, and the only defense has been that BAG is exempt from regulation pursuant to section 1101 (b) (2) (E).
Petitioner has also demonstrated a likelihood of success on the claim pursuant to General Business Law § 349. The deceptive and misleading letters regarding the identity of PRO-MARK and PROMARK, the trust fund, and the financial stability of the insurer can be regarded as "dishonest and misleading”. Petitioners need not show intentional fraud (Genesco Entertainment, Div. of Lymutt Indus. v Koch, 593 F Supp 743 [US Dist Ct SDNY 1984]), only misleading and deceptive practices. (Matter of Allstate Ins. Co. v Foschio, 93 AD2d 328 [2d Dept 1983].) The same reasoning applies to Executive Law *361 § 63 (see, State of New York v Management Transition Resources, 115 Misc 2d 489 [Sup Ct, NY County 1982]).
Petitioners have demonstrated irreparable injury since the unlicensed and unregulated practice of dental malpractice insurance within the State poses a serious and substantial threat to policyholders and their patients. That respondent has not failed to pay its claims is not relevant to the fact that no financial disclosure has been made in accordance with New York Insurance Law and that the serious risk exists that respondents are misleading the public and may not be complying with New York law.
For all the reasons discussed above, the balance of the equities is also in petitioner’s favor. Accordingly, the motion for preliminary injunction is granted.

. Respondents do not challenge jurisdiction over PROMARK since it is a New York corporation which was licensed in New York until 1985.

. Respondents cite Diskin v Starck (538 F Supp 877 [US Dist Ct EDNY 1982]) and other cases involving advertising. Diskin was a case where the underlying action was for personal injury and the plaintiff sought to establish that defendant was transacting business. The other cases discuss CPLR 301 jurisdiction. In Katz Agency v Evening News Assn. (514 F Supp 423 [US Dist Ct SDNY 1981]), the court held that the defendant foreign corporation was "present” and doing business in New York pursuant to CPLR 301 based upon a finding of heavy solicitation "plus something else”. The "plus” was found in the fact that the corporation’s activity in New York generated a substantial portion of its revenue. The practice commentary to this section states "it is clear from the cases in recent years that the something 'more’ has become very little else.” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C301:2 [1986 Pocket Part], p 2.) Thus, respondents may additionally fall within the CPLR 301 "presence” test, or the solicitation "plus” test, explained in the cases respondents cite. Because we find jurisdiction based on Insurance Law § 1101 (b) (1) and CPLR 302 (a), it is not necessary to reach this finding.

. This holding necessarily encompasses any mailings from Tortolla rerouted from Florida. In other words, rerouting Florida business through Tortolla mail does not cure the violations or put the insurance within the exception.