**John W. RIORDAN; Jane Fox,**
**Plaintiffs–Appellees,**

v.

**NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY,**
**Defendant–Appellant.**

**No. 1793, Docket 92–7160.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 10, 1992.
Decided Oct. 2, 1992.

Neil A. Goldberg, Buffalo, N.Y. (Lawrence A. Schulz, Richard J. Cohen, Saperston & Day, of counsel), for defendant-appellant.

Jonathan J. Wilkofsky, New York City (Mark L. Friedman, David B. Karel, Wilkofsky, Friedman, Karel & Cummins, of counsel), for plaintiffs-appellees.

Eugene R. Anderson and Leonard W. Stewart, New York City (Anderson Kill Olick & Oshinsky, P.C., of counsel), submitted a brief for amici curiae Beverly Brooks, et al. in support of plaintiffs-appellees.

Before: WINTER, MINER, and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Nationwide Mutual Fire Insurance Company appeals from a judgment entered on January 15, 1992 after a jury trial in the United States District Court for the Southern District of New York (Brieant, *Ch. J.*), awarding a total of $349,304.34 in damages and $174,652.17 in attorney's fees to plaintiffs-appellees John Riordan and Jane Fox (the "Riordans"). The Riordans, a married couple, commenced this action after their house and its contents suffered severe damage as a result of a fire. The Riordans initially made a claim under their homeowners insurance policy with Nationwide. After six months elapsed without settlement of their claim, the Riordans brought this action, alleging that Nationwide breached the insurance contract and committed deceptive acts and practices in violation of N.Y.Gen.Bus.Law § 349 (McKinney 1988) ("GBL § 349"). The Riordans sought compensatory, statutory and punitive damages as well as the attorney's fees permitted by GBL § 349(h). At the close of trial, the jury returned a verdict in favor of the Riordans, awarding compensatory and punitive damages in addition to damages under GBL § 349. The district court then approved an attorney's fees award.

On appeal, Nationwide asserts a variety of errors. Its principal contentions relate to the applicability of GBL § 349 to the insurance industry, the availability of attorney's fees in this case, the availability of punitive damages in a first party action

against an insurance company, and the sufficiency of the evidence adduced at trial supporting the GBL § 349 and punitive damages awards. Nationwide also seeks certification of certain questions to the New York Court of Appeals, contending that New York law on those issues is not settled and that therefore New York's highest court must resolve the issues before they can be litigated in this diversity suit. We hold GBL § 349 applicable to insurance companies' interactions with insureds and that sufficient evidence supported the damages awarded under that section. We also reject Nationwide's arguments that the Riordans' attorneys were required to submit contemporaneous time records and that the district court abused its discretion in awarding attorney's fees pursuant to GBL § 349. We certify questions regarding the availability of punitive damages in this case to resolve a split of authority between Appellate Division Departments on this issue.

## BACKGROUND

In 1988, the Riordans purchased from Nationwide an "Elite II" homeowners insurance policy to insure their residence located at 48 Overlook Road, Ossining, New York. The policy covered the building and its contents, guaranteeing payment of the replacement cost of both in the event of loss. On July 17, 1989, a fire occurred at the residence, completely destroying the downstairs family room and causing varying degrees of damage to other areas of the house. Most of the house and its contents, with the exception of the attic, suffered significant damage due to heat, soot, smoke, and water. Approximately ninety percent of the contents of the house, including clothing, artwork, antiques, and personal effects, was in need of repair or cleaning or had been totally destroyed.

After learning of the fire and its effects, the Riordans contacted their insurance agent at Nationwide and engaged Steven Seltzer, a public insurance adjuster with the firm of Goldstein Affiliates, to assist in handling their claim. Seltzer and the Riordans set about retaining the appropriate persons to estimate the damages to the house and its contents. They also began to prepare for submission to Nationwide an inventory listing the approximate values of all personal effects damaged or destroyed in the fire. Nationwide's claims adjuster, John Hahn, visited the premises on two occasions after the fire. The first time, within two days of the occurrence, Hahn made a preliminary evaluation of the scene and had a contractor estimate the cost of repairing the damage to the house. The second and final time, on August 2, 1989, Hahn went through the entire house with Seltzer. The Riordans previously had provided Hahn with their completed inventory, so Hahn took notes on the inventory sheets regarding the condition of the items and the likelihood and cost of repair. Hahn did not authorize the start of any repairs or cleaning for the house or its contents, despite several attempts thereafter by Seltzer to obtain such authorization. Although he already had the Riordans' inventory with item values, Hahn demanded that the Riordans compile for Nationwide a sworn Statement in Proof of Loss, a document listing each item of inventory for which reimbursement was claimed and its value.

The Riordans, after tiring of Hahn's failure to communicate with them, proceeded to have their personal effects removed from the house for cleaning and restoration by companies which Seltzer recommended. Seltzer and the Riordans began compiling the information for the Proof of Loss based on the reports and estimates provided by the companies hired to clean and restore the personal effects. Nationwide never sent anyone to evaluate the damage to these items, although Seltzer continually requested Hahn to do so. The Riordans timely submitted the Proof of Loss to Nationwide, but detailed only those items known at that point to be irreparably damaged or destroyed. Not included were items on which restoration or cleaning was being attempted. For this reason, at the end of the Proof of Loss the Riordans reserved the right to amend the document upon completion of the analysis of the damage and the attempts at restoration.

Between the time Hahn demanded the Proof of Loss and the submission of the document, Hahn and Nationwide did not take any steps to ascertain the amount of damage to the contents of the house. Although Hahn had the inventory during this period, he did not question the amounts claimed therein or send appraisers to evaluate the condition of the Riordans' personal effects, or the possibility of repairing or cleaning them. Nor did Hahn answer Seltzer's numerous letters and telephone calls requesting meetings, advances, or other action by Nationwide on the claim. Even after receipt of the Proof of Loss, Hahn failed to respond, neither approving or denying the claim nor requesting additional information. In mid-November, over a month after receiving the Proof of Loss, Hahn sent experts to evaluate the damage to certain of the antiques and artwork in the possession of the restoration company, although much restoration work had been completed by this time. Nationwide's experts did not cooperate with the restoration company personnel, and Nationwide never produced the results of the appraisals to the Riordans or explained whether their claim would be affected.

With regard to the building portion of the claim, Seltzer had retained a construction contractor to evaluate the cost to repair the damage to the Riordans' home. Seltzer then sought an advance on this portion of the Riordans' claim so that construction could start. Nationwide obliged with a $25,000 advance, but the Riordans could not utilize the money for repairs without prior approval from Citibank, the mortgagee of the property. Citibank would not release the funds until the building portion of the claim had been settled, so the Riordans were forced to leave the house in its damaged condition and live in their summer home on Long Island.

Finally, on January 16, 1990, Hahn met with Seltzer in an attempt to settle the Riordans' claim. At that meeting, Seltzer agreed to accept the amount offered by Hahn to settle the building portion of the claim, although it was below what the Riordans sought. Hahn telephoned his supervisor, Joseph Kenyon, for approval to settle that portion of the claim, but Kenyon refused to do so unless the Riordans agreed to accept Nationwide's offer on the contents portion of the claim. Nationwide, through Hahn, had offered approximately $21,000 to settle the contents portion of the claim, but Seltzer previously had rejected the same amount as too far below the figure of more than $160,000 sought by the Riordans based on the Proof of Loss. As a consequence, Seltzer felt constrained to reject settlement of the building portion of the claim because it was contingent on settlement of the contents portion at the low amount.

In December 1989, the Riordans, at this point tired of waiting for Nationwide to settle their claim, registered a complaint with the New York Department of Insurance. The Department did not respond to the complaint until April 1990 and then only recommended that the Riordans retain an attorney and sue. The Riordans had already commenced this suit on January 24, 1990, alleging that Nationwide's actions amounted to a breach of the insurance contract and that Nationwide had committed deceptive acts and practices in violation of GBL § 349 in the claims settlement process. The Riordans sought to recover compensatory and punitive damages, damages as permitted by statute for the deceptive acts of Nationwide, and attorney's fees as permitted under GBL § 349(h). On December 12, 1990, the district court (Kram, *J.*) granted the Riordans' motion for summary judgment on the breach of contract claim, reserving for trial the issue of damages on that claim, and denied Nationwide's motion to dismiss. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.Supp. 732 (S.D.N.Y. 1990). Trial commenced on November 6, 1991, at the close of which the jury rendered a verdict in favor of the Riordans, awarding $36,692.55 for repair of the house, $112,611.79 for damages to the contents, $49,000 in living expenses, $1000 on the deceptive acts and practice violations, and $150,000 in punitive damages. Upon motion of the Riordans, the district court determined that an award of attorney's fees pursuant to GBL § 349(h) was war-

ranted, and, based on the parties' submissions, set the amount at $174,652.17.

## DISCUSSION

Nationwide has made a motion to certify to the New York Court of Appeals various issues it raises on appeal, contending that, as these issues raise questions of first impression in New York, certification is warranted before a federal court addresses the matters. Because the motion encompasses the substantive issues raised on appeal, we first set forth the standards for certification. Then, along with the discussion of each substantive issue, the standards will be applied in order to determine suitability for certification.

Certification of a question of law to the New York Court of Appeals is permissible, pursuant to 2d Cir.R. § 0.27 and N.Y.Ct. App.R. § 500.17, when there is no controlling New York precedent on the issue. *See, e.g., Unigard Sec. Ins. Co. v. North River Ins. Co.*, 949 F.2d 630 (2d Cir.1991); *Banque Worms v. BankAmerica Int'l*, 928 F.2d 538 (2d Cir.1991). Certification is a discretionary device, both for the certifying court and for the court requested to answer the certified question. N.Y.Ct.App.R. § 500.17 (entitled "Discretionary Proceedings to Review Certified Questions"); 2d Cir.R. § 0.27 ("this Court *may* certify to the highest court of a state an unsettled and significant question of state law") (emphasis added); *see* Ira P. Robbins, *The Uniform Certification of Questions of Law Act: A Proposal for Reform*, 18 Notre Dame J. Legis. 127, 140–44, 156–58, 170–71 (1992) (explaining discretionary certification provisions of Uniform Act and New York's rule). In the past, we have certified questions to the New York Court of Appeals only where there is a split of authority on the issue, where the statute's plain language does not indicate the answer, or when presented with a complex question of New York common law for which no New York authority can be found. *See, e.g., Unigard Security*, 949 F.2d at 631–32 (certifying question of whether reinsurer must prove prejudice before successfully invoking defense of late notice of loss, because

of lack of New York appellate authority and "split of authority within the Southern District of New York"); *Banque Worms*, 928 F.2d at 540–41 ("lack of clear precedent was evidenced by the fact that both appellant and appellee cited [the same case]" for contrary positions and by presence of Appellate Division cases supporting both arguments); *Alexander & Alexander Servs., Inc. v. Lloyd's Syndicate 317*, 902 F.2d 165, 168–69 (2d Cir.1990) (certifying question of whether personal jurisdiction requisite of "doing business" in New York is satisfied by presence of insurance company trust fund at New York bank in compliance with New York law, but no other business transacted in state because statute not clear and no court decisions address the issue); *Home Ins. Co. v. American Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir. 1989) (certifying question of whether insurer is required to reimburse insured for punitive damages award in foreign judgment because question one of New York public policy).

### A. *Applicability of GBL § 349*

GBL § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." The statute provides both for enforcement by the attorney general, *id.* § 349(b), and a private right of action to any person injured by the deceptive acts or practices committed by a business, *id.* § 349(h). Nationwide contends that the statute cannot be used against insurance companies because of the pervasive statutory scheme regulating unfair and deceptive acts and practices by insurance companies. *See* N.Y.Ins.Law §§ 2401 *et seq.* & 2601 (McKinney 1985). The Insurance Law empowers and charges the Superintendent of Insurance to investigate and hold hearings on allegations of deceptive and unfair claims settlement practices, and to enforce the statute's prohibitions by cease and desist orders or, through the attorney general, judicial action. *Id.* §§ 2404–07. Nationwide asserts that this statutory scheme preempts the use of GBL § 349 by private individuals against insurance companies.

This argument fails, however, because it ignores the plain language of GBL § 349(g), which states that "[t]his section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state." By its own terms, therefore, GBL § 349 applies to the acts or practices of every business operating in New York. Official Practice Commentaries to General Business Law §§ 349–50, *reprinted at* 19 McKinney's § 349, at 90–92 (Supp.1992) (stating that GBL § 349 "contains no exceptions or exemptions for regulated industries", and suggesting possible usages against insurance companies). Nowhere does GBL § 349 provide an exception for insurance companies, nor does the Insurance Law exempt insurance companies from the reach of GBL § 349.

In *Sulner v. General Accident Fire and Life Assurance Corp.*, 122 Misc.2d 597, 599–601, 471 N.Y.S.2d 794, 796–97 (N.Y.Sup.Ct.1984), the court denied the defendant insurance company's motion to dismiss a cause of action by an insured under GBL § 349. *Sulner* involved the claim of an insured to recover for water damage to documents and other property of a business. The insurance company argued that GBL § 349 was inapplicable in the insurance claims context. The court, citing to legislative history and the rule that " 'remedial statutes are liberally construed [in order] to carry out the reforms intended,' " held the statute applicable to the conduct of insurers and found that the complaint "allege[d] a series of acts which ... may be found to be deceptive." *Id.* (alteration in original). Although *Sulner* is not an appellate decision, we find its reasoning persuasive, especially in light of the language of the statute and the Official Practice Commentaries. *See also People v. British & Am. Casualty Co.*, 133 Misc.2d 352, 360–61, 505 N.Y.S.2d 759, 766 (Sup.Ct. 1986) (granting preliminary injunction to attorney general under GBL § 349 to prohibit insurance company sending to customers letters containing deceptive and misleading information). *But cf. Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 (S.D.N.Y.1988) (finding

acts pleaded in complaint against insurance company "not the types of transactions that fall within the scope of [GBL § 349]", because "consumers have not been harmed and the public interest has not been implicated").

■ Nationwide further contends that the New York legislature "did not intend for the type of conduct alleged against Nationwide in this action to be subject to the private right of action created by subsection (h) [of GBL § 349]." Nationwide argues that the statute is meant to cover the deceptive actions of retail operations "or the type of conduct generally prosecutable in small claims court." However, the language of the statute places no such limitations on the citizen suit provision of subsection (h). Given the statutory intent to protect consumers, *Azby Brokerage*, 681 F.Supp. at 1089, we see no reason to limit the application of the statute to small claims when consumers at all levels are subject to deceptive acts and practices.

■ Under the circumstances, certification is not warranted on the question of the applicability of GBL § 349. The statute is clear, and none of Nationwide's arguments raises a serious question about the correct interpretation of the language.

■ Nationwide also challenges the sufficiency of the evidence supporting the jury's verdict on this claim. In a case applying New York law, a reviewing court may only set aside a jury verdict if the "evidence so preponderates in favor of the party against whom the verdict was rendered that it is clear that the jury did not reach its conclusion on a fair interpretation of the evidence ... or if a contrary conclusion is the only reasonable inference that can be made from the proven facts." *Billiar v. Minnesota Mining & Mfg. Co.*, 623 F.2d 240, 247–48 (2d Cir.1980) (citations omitted). On this record, the Riordans adduced ample evidence proving that Nationwide engaged in various deceptive acts and practices in their dealings. For example, the evidence at trial showed that Nationwide continually failed to acknowledge correspondence from the Riordans, demanded

a Proof of Loss statement without justification, refused to accept the Riordans' inventory simply because it was not on Nationwide's forms, failed to respond to the Proof of Loss statement as required by N.Y.C.R.R. § 216.6(c), and required that both the contents and building loss claims be settled together in violation of N.Y.C.R.R. § 216.6(e). Nationwide also refused to estimate, much less pay, the replacement cost value of the Riordans personal effects as required by the policy. The Riordans had purchased the "Elite II" policy which ostensibly entitled them to certain extra benefits, none of which they received because of Nationwide's dilatory tactics. Additionally, the Riordans presented ample evidence to prove that Nationwide engaged in similar deceptive settlement practices against other policyholders, thus satisfying the GBL § 349 requirement that the conduct be recurring or have ramifications for the general public. *Genesco Entertainment v. Koch*, 593 F.Supp. 743, 751–52 (S.D.N.Y.1984); *see also Azby Brokerage*, 681 F.Supp. at 1089 (citations omitted).

### B. *Attorney's Fees Award Under GBL § 349*

■ Pursuant to GBL § 349(h), a "court may award reasonable attorney's fees to a prevailing plaintiff." Nationwide argues that the district court erred in awarding attorney's fees under this subsection because the Riordans' attorneys did not submit contemporaneous time records as required by *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir.1983). In that case, we required that "any attorney ... who applies for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1148. Failure to do so results in denial of the motion for fees. On the other hand, New York courts have specifically rejected the "hard and fast rule that reconstructed time records can never serve as a basis for compensation" in favor of wider trial court discretion in evaluating

fee petitions. *In re Karp*, 145 A.D.2d 208, 216, 537 N.Y.S.2d 510, 515 (1st Dep't 1989).

Nationwide contends that the district court should have applied the federal rule in the present case and rejected the petition for attorney's fees because of the Riordans' attorneys failure to keep contemporaneous time records. State law creates the substantive right to attorney's fees, *see Chambers v. NASCO, Inc.*, — U.S. —, —, 111 S.Ct. 2123, 2136–37, 115 L.Ed.2d 27 (1991), a right which cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit, *Carey*, 711 F.2d at 1147. *See Northern Heel Corp. v. Compo Indus., Inc.*, 851 F.2d 456, 475 (1st Cir.1988) (ruling method of calculating award substantive and hence rejecting district court use of federal "lodestar" method of calculating attorney's fees in favor of Massachusetts law which looked to party's engagement agreement with its lawyers); *Blanchette v. Cataldo*, 734 F.2d 869, 878 (1st Cir.1984) (applying state law mandatory fee provision to reverse district court denial of attorney's fees); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 232 (1st Cir.1980) (remanding to district court for calculation of attorney's fees in accordance with state law and noting that "[t]o the extent [state] law is silent or incomplete on the calculation of attorney's fees, [federal law] may well be relevant"); *cf. Powell v. Old S. Life Ins. Co.*, 780 F.2d 1265, 1267–68 (5th Cir.1986) (acknowledging but not deciding whether method of calculation is substantive).

■ Nationwide next contends that the district court abused its discretion in making the award and therefore that legal fees should be denied or limited. We perceive no abuse of discretion in this instance. The district court in its opinion took into account the factors ordinarily considered by New York courts when evaluating requests for attorney's fees, including the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved. *See In re Estate of Gutchess*, 117 A.D.2d 852, 854, 498 N.Y.S.2d 297, 300 (3d Dep't), *appeal denied*, 68 N.Y.2d 609, 508 N.Y.S.2d 1026,

501 N.E.2d 36 (1986); *In re Ury,* 108 A.D.2d 816, 817, 485 N.Y.S.2d 329, 330 (2d Dep't), *appeal denied,* 64 N.Y.2d 611, 490 N.Y.S.2d 1024, 479 N.E.2d 827 (1985). In calculating the award, the district court limited the amount to one half of the total amount of damages awarded, so that the resulting fee award was some $38,000 less than requested. The district court expressly noted that it was limiting the final award to fifty percent of the recovery, rather than using the fifty percent figure as the determinant of the appropriate fee. In setting this relationship between the amount recovered and the amount of the fee award, the district court merely exercised its discretion with respect to one factor considered in arriving at an appropriate fee award: the result obtained. In a case such as this, where the issues and claims intertwine to such a great extent, a limitation based on the total recovery does not seem unreasonable to us.

■ Nationwide also seeks certification of the attorney's fees issues. Again, the plain language of the statute leaves no room for interpretation. There is nothing to suggest that a court may only award fees in certain types of cases. The fee award is left to the discretion of the trial court in all circumstances, and hence we see no reason to certify this question to the New York Court of Appeals.

## C. *Punitive Damages*

■ Nationwide argues that the district court erred in permitting the jury to consider and award punitive damages in this case. Nationwide maintains that New York law does not permit an insured to recover punitive damages from an insurance company in a first party suit premised on unfair and deceptive claims practices in violation of an insurance contract because N.Y.Ins.Law § 2601 (McKinney 1985) preempts such recovery. Alternatively, Nationwide argues that, assuming the availability of punitive damages, the Riordans failed to adduce sufficient evidence to support the award. Under the circumstances revealed here, we are constrained to certify these questions to the New York Court of Appeals in order to apply the correct New York law to the facts of this case.

■ Although punitive damages generally are recoverable in New York for morally culpable acts aimed at the public, *Walker v. Sheldon,* 10 N.Y.2d 401, 404–05, 223 N.Y.S.2d 488, 490–91, 179 N.E.2d 497, 498 (1961), the New York Court of Appeals has yet to rule directly on the preemption issue. *See, e.g., Halpin v. Prudential Ins. Co. of Amer.,* 48 N.Y.2d 906, 908, 425 N.Y.S.2d 48, 49, 401 N.E.2d 171, 172 (1979); *Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 437–39, 334 N.Y.S.2d 601, 608, 285 N.E.2d 849, 854 (1972). There is a split between the First and Second Departments over whether punitive damages may be recovered in this context. *Compare Belco Petroleum Corp. v. AIG Oil Rig, Inc.,* 164 A.D.2d 583, 585–91, 565 N.Y.S.2d 776, 777–81 (1st Dep't 1991) (Ins.Law § 2601 does not preempt punitive damages, which are recoverable "upon an appropriate showing of morally reprehensible conduct aimed at the general public") *with Roldan v. Allstate Ins. Co.,* 149 A.D.2d 20, 40–43, 544 N.Y.S.2d 359, 371–74 (2d Dep't 1989) ("The availability of punitive damages in private lawsuits premised on unfair claim practices has been preempted by the administrative remedies available to the Superintendent of Insurance pursuant to Insurance Law § 2601."). *But see Porter v. Allstate Ins. Co.,* —— A.D.2d ——, 585 N.Y.S.2d 465 (2d Dep't 1992). The Third and Fourth Departments have not ruled on the issue, but have implicitly recognized the availability of punitive damages. *Monroe v. Providence Washington Ins. Co.,* 126 A.D.2d 929, 930, 511 N.Y.S.2d 449, 451 (3d Dep't 1987); *DiBlasi v. Blue Cross of W.N.Y., Inc.,* 156 A.D.2d 986, 987, 548 N.Y.S.2d 829, 830 (4th Dep't 1989). The language of section 2601 does not indicate whether preemption of punitive damages was intended. Certification is therefore warranted.

Our decision to certify this issue does not preclude us from affirming the remainder of the judgment and ordering that the mandate issue. *See Securities and Exchange Comm'n v. Elliott,* 953 F.2d 1560, 1584 (11th Cir.1992); *Lohr v. Florida Dep't of*

*Corrections*, 835 F.2d 1404, 1406 (11th Cir. 1988). Consequently, we choose to have the mandate issue as to the matters resolved and retain jurisdiction on the punitive damages issues pending a response from the New York Court of Appeals.

## CONCLUSION

The judgment of the district court is AFFIRMED in all respects, except as to the punitive damages issues. It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. The mandate shall issue as to those portions of the district court's judgment which we affirm. This panel shall retain jurisdiction in order to rule on the availability of punitive damages and, if necessary, the sufficiency of the evidence supporting the jury's award, once a response from the New York Court of Appeals is received.

## APPENDIX

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

Docket No. 92–7160

Filed October 2, 1992

JOHN W. RIORDAN; JANE FOX,
*Plaintiffs–Appellees,*

—against—

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,
*Defendant–Appellant.*

Certificate to The New York Court of Appeals pursuant to McKinney's Revised 1992 New York Rules of Court § 500.17(b) (certification of unsettled questions of state law)

The home of John Riordan and Jane Fox (the "Riordans"), a married couple, was partially destroyed by fire on July 17, 1989. The Riordans, with the assistance of a public insurance adjuster, submitted a claim under their homeowners insurance policy with Nationwide Mutual Fire Insurance Company. Nationwide engaged in certain dilatory measures to thwart full and prompt payment of the claim. After waiting six months and experiencing a variety of delays, refusals to settle, and other deceptive claims settlement practices on the part of Nationwide, the Riordans commenced this action in federal district court seeking, among other relief, punitive damages. At the close of trial, the jury rendered a verdict in favor of the Riordans, awarding compensatory damages, damages pursuant to N.Y.Gen.Bus.Law § 349 (McKinney 1988) ("GBL § 349"), and punitive damages. Upon motion of the Riordans, the district court awarded to them attorney's fees pursuant to GBL § 349(h). Nationwide appealed, alleging a variety of errors. We rejected all the claims of error except Nationwide's challenges to the punitive damages recovery. Specifically, Nationwide contends that New York law prohibits an insured from recovering punitive damages on a breach of insurance contract claim because N.Y.Ins.Law § 2601 (McKinney 1985) preempts such a recovery, or in the alternative that even if punitive damages may be recovered, the Riordans adduced insufficient evidence at trial to support the award.

The Riordans were permitted at trial to offer proof on the issue of punitive damages after the district court (Kram, *J.*) denied Nationwide's motion to dismiss, the district court having concluded that New York law permitted recovery of punitive damages when a plaintiff proves that an insurer committed morally reprehensible conduct in dealing with the general public. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.Supp. 732, 740–42 (S.D.N.Y.1990). To prove their entitlement to such damages, the Riordans offered testimony from other insureds who had submitted claims to Nationwide under homeowners policies and had encountered difficulties similar to the Riordans'. The evidence indicated that Nationwide's past tactics included dilatory settlement practices, lack of response to correspondence in violation of N.Y.C.R.R. § 216.6(a), failure to respond to the Proof

of Loss statement as required by N.Y.C.R.R. § 216.6(c), and refusal to settle claims piecemeal in violation of N.Y.C.R.R. § 216.6(e). The Riordans also attempted, by eliciting testimony from Nationwide employees, to prove that Nationwide regularly put insureds into inadequate alternative living quarters during the claims settlement process in derogation of the terms of their insurance policies, and that Nationwide consistently offered to settle claims for amounts below their own experts' estimates. Finally, the Riordans produced evidence that Nationwide flagged certain policies as unprofitable in order to alert claims adjusters in the handling of future claims under those policies. Nationwide allegedly treated its insureds in this fashion to force claimants to accept low settlements instead of waiting long periods of time in poor conditions to obtain a reasonable settlement.

In support of its position that the Riordans are precluded from recovering punitive damages, Nationwide principally relies upon *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 40–43, 544 N.Y.S.2d 359, 371–74 (2d Dep't 1989), and the failure of any New York court to uphold punitive damages awards in this context. In *Roldan*, the Second Department

> conclude[d] that allegations that an insurance company is engaging in a persistent course of conduct involving fraud or unfair claims practices may more properly be evaluated and, if proved, be redressed by the Superintendent of Insurance, who is charged by law with the regulation of this industry, rather than by private litigants. The availability of punitive damages in private lawsuits premised on unfair claim practices has been preempted by the administrative remedies available to the Superintendent of Insurance pursuant to Insurance Law § 2601.

*Id.* at 43, 544 N.Y.S.2d at 374.

The Riordans contend that punitive damages are recoverable in this case, relying principally on *Belco Petroleum Corp. v. AIG Oil Rig, Inc.*, 164 A.D.2d 583, 585–91,

565 N.Y.S.2d 776, 777–81 (1st Dep't 1991). In that case, the First Department rejected *Roldan*'s analysis and held that punitive damages are available to insureds "upon an appropriate showing of morally reprehensible conduct aimed at the general public." *Id.* at 588, 575 N.Y.S.2d at 779. The Riordans also point to a myriad of cases which, while rejecting claims for punitive damages, have at least implicitly recognized their availability. *See, e.g., DiBlasi v. Blue Cross of W.N.Y. Inc.*, 156 A.D.2d 986, 987, 548 N.Y.S.2d 829, 830 (4th Dep't 1989); *Botway v. American Int'l Assurance Co. of New York*, 151 A.D.2d 288, 290, 543 N.Y.S.2d 651, 653 (1st Dep't 1989); *Monroe v. Providence Washington Ins. Co.*, 126 A.D.2d 929, 930, 511 N.Y.S.2d 449, 451 (3d Dep't 1987). Finally, the Riordans maintain that the evidence produced at trial sufficiently establishes the type of reprehensible conduct towards the public at large to support a punitive damages award.

This Court has found no New York Court of Appeals decision directly addressing the question of whether an insured may recover punitive damages in such circumstances. *See Dano v. Royal Globe Ins. Co.*, 59 N.Y.2d 827, 829, 464 N.Y.S.2d 741, 742, 451 N.E.2d 488, 489 (1983) (assuming availability of remedy but dismissing claim because general business practice not supportable on facts of case); *Hubbell v. Trans World Life Ins. Co. of New York*, 50 N.Y.2d 899, 901, 430 N.Y.S.2d 589, 590, 408 N.E.2d 918, 919 (1980) (same); *Halpin v. Prudential Ins. Co. of Amer.*, 48 N.Y.2d 906, 908, 425 N.Y.S.2d 48, 49, 401 N.E.2d 171 (1979) (same); *cf. Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 437–39, 334 N.Y.S.2d 601, 608–10, 285 N.E.2d 849, 854–55 (1972) (punitive damages may be recovered for breach of insurance contract upon "an extraordinary showing of a disingenuous or dishonest failure to carry out a contract").

The unsettled questions that should be addressed by the New York Court of Appeals are as follows:

(1) Does Ins.Law § 2601 preempt the common law right to punitive damages in private lawsuits premised on unfair claim

practices in breach of an insurance contract?

(2) If Ins.Law § 2601 does not preempt the common law right to punitive damages, must the insured, in order to recover punitive damages, prove that the insurer engaged in morally reprehensible conduct aimed at the general public such that anyone doing business with the insurer could be exposed to the conduct?

These questions should be decided by the New York Court of Appeals at this time because determination of whether an insured may recover punitive damages and the standard of proof for such a recovery is important to the rights of insureds and insurers. More importantly, the issue directly implicates New York's public policy regarding awards of punitive damages, and thus New York has a strong interest in resolving the issue on certification rather than allowing this Court, by setting federal precedent, to further fuel the debate between the Departments. The question herein presented is likely to recur, and its resolution at this time by the New York Court of Appeals would aid in the administration of justice on both the state and federal levels. Finally, a ruling on this issue of law would be determinative in the pending action because the answer controls whether the Riordans may recover punitive damages.

The foregoing is hereby certified to the Court of Appeals for the State of New York as ordered by the United States Court of Appeals for the Second Circuit.

Dated at New York, New York, this ___ day of ___, 1992.

/s/ *Elaine B. Goldsmith*

Clerk of the United States Court of Appeals for the Second Circuit.